PEARSE v. NATIONAL LEAD CO. et al.    (No. 5839.)

(Supreme Court, Appellate Division, First Department.    May 29, 1914.)

1. EXECUTORS AND ADMINISTRATORS (§ 513*)—ACCOUNTING—SETTLEMENT OF ACCOUNTS—OPERATION AND EFFECT.

    A decree settling the accounts of executors, even had it directly discharged the executors as such, or instructed them to pay or turn over to themselves as trustees the funds of the estate, would have discharged them only pro tanto.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2267–2291; Dec. Dig. § 513.*]

2. CORPORATIONS (§ 134*)—STOCK—TRANSFER—LIABILITY OF CORPORATION.

    Where a testator bequeathed stock to his executors in trust, the corporation, though it had notice of the trust, was entitled to treat the executors as the owners of the stock until their title was divested by a transfer upon the books of the company, and hence was not liable to the cestuis que trust, where it recognized a transfer by the executors as such and issued new certificates to the transferee, instead of declining to recognize the transfer unless made by the trustees.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 521–525, 527, 528; Dec. Dig. § 134.*]

3. EXECUTORS AND ADMINISTRATORS (§ 153*)—TITLE TO PERSONAL PROPERTY—RELATING BACK TO DEATH.

    The title to a decedent's personal property vested in his executors relates back substantially to the day of the decedent's death.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 629, 630; Dec. Dig. § 153.*]

4. EXECUTORS AND ADMINISTRATORS (§ 124*)—DISPOSAL OF ASSETS—POWER OF ONE EXECUTOR.

    One of two or more executors has power to dispose of the assets of the testator, even though his coexecutors do not join in the transfer, and hence a transfer of stock by one executor was not invalidated by the forged signature of his coexecutor thereto.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 496–507; Dec. Dig. § 124.*]

Appeal from Special Term, New York County.

Action by Frederick W. Pearse against the National Lead Company and others.  From a judgment in favor of plaintiff and certain of the defendants, the defendant named appeals.  Reversed, and judgment ordered for appellant.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Lanier McKee, of New York City (Sayre McLeod, of New York City, on the brief), for appellant.

I. Newton Williams, of New York City, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DOWLING, J. This is an appeal from a judgment directing that the defendant National Lead Company replace and deliver to the plaintiff and to the defendants George A. Pearse, Laura M. Gorman, Carrie V. Rooney, and Edward H. Pearse (being his brothers and sisters), to each 5⅖ shares of the preferred stock and 5⅖ shares of the common stock of said company, or, in default thereof, pay to said parties the value of said stocks, together with the dividends and interest thereupon. The controversy arises out of 27 shares of National Lead Company preferred stock and a similar amount of its common stock, originally standing in the name of Augustus F. Pearse, the grandfather of the plaintiff and of the four defendants named. Said stock was issued to Augustus F. Pearse in 1891, and remained in his name until the time of his death, December 24, 1898. Augustus F. Pearse left a last will and testament and a codicil thereto, which were duly admitted to probate in the Surrogate's Court of New York County, March 18, 1899, wherein he named as executors and trustees, Charles B. Pearse, his son, and his friends Samuel Derickson and Edward Tillou, Charles B. Pearse and Edward Tillou alone qualified as such executors and trustees, and letters testamentary were duly issued to them March 20, 1899. By the ninth clause of his will, said testator gave, devised, and bequeathed to his executors, their survivor and successors, among other personal property, all his shares of the capital stock of the National Lead Company to have and to hold the same during the life of his son George A. Pearse, "in trust, and with power to collect and receive the rents, issues and profits thereof, to the use of the said George A. Pearse during his life," and upon his death he gave, devised, and bequeathed absolutely forever the said personal property (with other) "to his issue in equal shares per stirpes and not per capita; and in case he shall die without leaving issue him surviving," then "to such of my issue as shall then be living in equal shares, the issue of a deceased child in every case to take the share which the parent would have taken if living." By the eighteenth clause of said will, power was given the executors to retain any stocks, bonds, or other investments held by the testator at the time of his decease, or to change the same at their discretion, and to invest the proceeds of any real or personal property that might be sold by them. By the nineteenth clause of the will, the executors were given "full power and authority to sell and convey and convert into money the real and personal property given and devised to them in trust, or any part thereof, at such times and in such manner and for such prices as they might deem wise and advantageous for the purposes of the respective trusts and the execution of all the provisions of this will."

[1] The executors under said will of Augustus F. Pearse filed their account, and a decree was entered thereupon April 17, 1901, in the usual form, including a summary of the receipts and disbursements of the estate, and by which judgment it was, among other things, adjudged and decreed that the said accounting of the executors and trustees be judicially settled and allowed as filed and adjusted. The executors then were directed to make certain payments, and a clause allowed them to claim upon a future accounting the commissions to which they may be entitled for receiving and paying out the sum of

$3,500, the proceeds of the sale, as shown in the account of the Litchfield property devised to them in trust, and that the principal of the moneys and other personal property bequeathed to them upon the several trusts declared in said will, be subject to the determination of a future accounting of the commissions to which said executors may be entitled as trustees, and that such commissions, if any, shall not be deemed to be waived by them. The final clause of the decree provided:

"That they" (i. e., the executors) "continue to execute the trusts created by the will in pursuance of the directions contained in the will and according to law during the respective terms thereof as provided by the will."

Nowhere in this decree, however, is there any direct provision by which the executors are discharged or by which they are instructed to pay or turn over to themselves as trustees any funds of the estate. Nor would even such a provision have operated to absolutely terminate the executorial functions, nor done more than to discharge them pro tanto. Mahoney v. Bernhard, 45 App. Div. 499, 63 N. Y. Supp. 642, affirmed 169 N. Y. 589, 62 N. E. 1097. On March 31, 1899, the National Lead Company had been notified by Edward Tillou as executor to pay all dividends upon the stock in question by check to the order of "estate of Augustus F. Pearse," care of Charles B. Pearse, 407 Fourth avenue, New York City. George A. Pearse, the son of the testator, and the life tenant under the will, died March 15, 1910. His heirs at law and next of kin were the plaintiff herein and his four brothers and sisters. These remaindermen on April 5, 1910, joined in a written demand that the executors and trustees of their grandfather's estate deliver to them within two days the personal property which was subject to the trust hereinbefore referred to, including the shares of stock in the defendant company. On May 7, 1910, the attorney for the remaindermen, together with Charles B. Pearse, the attorneys for his coexecutor and trustee, and others, met at the office of the Lincoln Trust Company, and there examined the securities belonging to the estate, when they discovered that the certificates representing the National Lead Company stock were not in the possession of the executors, and they were then informed by Charles B. Pearse that he had sold both the common and preferred shares. The record discloses that these charges had been sold as far back as 1907 and 1908. On September 13, 1907, the firm of Winslow Lanier & Co. had paid for part of these shares $2,540.83 by check made to the order of Charles B. Pearse, executor of the estate of Augustus F. Pearse, deceased, which was paid in due course, and was indorsed by estate of Augustus F. Pearse, deceased, by Charles B. Pearse, executor, and by Charles B. Pearse, individually. On May 21, 1908, Winslow Lanier & Co. had paid for the remainder of the stock $1,670.08 by check to the order of the estate of Augustus F. Pearse, which was paid in due course and bore the indorsements, "Estate of Augustus F. Pearse, by Charles B. Pearse, Executor," and "Charles B. Pearse."

It now appears that the two certificates in representing the stock standing in the name of Augustus F. Pearse and thus sold to Winslow Lanier & Co. had, at the time of the two sales referred to, been in-

dorsed for transfer in the name of the "Estate of Augustus F. Pearse, by Charles B. Pearse, Executor," and "Edward Tillou, Executor"; both transfers purporting to be acknowledged, one before a notary public, the other before a commissioner of deeds. It sufficiently appears, as well, that the signature "Edward Tillou, Executor," to both of said indorsements on the certificates of stock, was a forgery, and that in fact they had been signed by Charles B. Pearse, executor, alone.

[2] It is the contention of the plaintiff that at the time of these transfers Charles B. Pearse and Edward Tillou were acting as trustees in respect to this stock, and that, as the defendant had notice of the trust by reason of the deposit with it of a certificate showing the appointment of the executors and of a certified copy of the will of the testator, it should not have recognized any attempted transfer by the executors as such, but should have declined to issue new certificates save upon the signature of the trustees.

We find ourselves unable to accept this view of the duty of the lead company. The original certificates of stock had stood, and always stood, upon its books in the name of the testator, Augustus F. Pearse. So far as it was concerned, the only owner of the stock whom it was bound to recognize was Pearse, in his lifetime; and, after his death, the executors of his estate until they had transferred the stock to some one else by proper indorsement thereupon. Immediately upon the death of Pearse the title to this stock vested in the executors who qualified, and they could not be divested of the title save in the only way recognized for such a transfer, namely, upon the books of the company at the instance of the executors of the decedent, in whose name the stock still stood.

[3] Not only is the title to the decedent's personal property vested in his executors, but their title relates back substantially to the day of the decedent's death. Schouler on Executors, p. 318. There was therefore no break in the continuity of title from the decedent into his executors, and no divesting thereof until one of the executors should make a transfer thereof.

[4] It is well settled that one of two or more executors has power to dispose of the assets of the deceased even though his coexecutors do not join in the transfer. Geyer v. Snyder, 140 N. Y. 394, 35 N. E. 784. The fact that besides the signature of Pearse, as executor, there also appeared a forged signature of his coexecutor, does not affect the validity of the attempted transfer any more than would the presence of the names of unnecessary executors thereupon. Id. The company was justified in recognizing the direction to transfer given by the only person who had the legal right so to do, namely, the executor of the testator's estate, and, as it is not responsible for the disposition made by him of the proceeds of such a sale, there is no theory under which it can be held accountable in this action.

The judgment appealed from will therefore be reversed, with costs, and judgment ordered in favor of the appellant, dismissing the complaint upon the merits, with costs. All concur.