EDWARD A. JANDORF and Another, Appellants, *v.* WIMAN H. SMITH and Another, as Executors and Trustees, etc., of JOHN H. SMITH, Deceased, Respondents.

Fourth Department, June 29, 1926.

Wills — construction — action to compel specific performance of contract by executors to sell real property of testator — will devised property to executors in trust for benefit of wife and after her death to hold in separate trusts for benefit of children — each child at age of fifty was to be paid equal divided share of estate — executors were given power of sale — no title vested in children on reaching fifty years of age — plaintiffs, if satisfied with title, could compel conveyance — defendants had full power to convey — title is marketable.

This is an action to compel the specific performance of a contract entered into by the defendants as executors and trustees to sell a business block to the plaintiffs. The testator devised his real property to the defendants in trust for the benefit of his wife for life and after her death to hold the property in separate trusts for the benefit of his children and pay the income thereof to them until they should reach the age of fifty years. The will directed that as soon as any child arrived at the age of fifty years he should be paid an equal divided share of the estate. At the time the contract in question was made two of the children had reached the age of fifty years and the widow had died. The will gave the executors the power to sell all real property. The plaintiffs are willing to accept the title that

App. Div. 150]            Fourth Department, June, 1926.

the defendants can convey and, therefore, they are entitled to compel the defendants to convey such title as they possess.

However, the full title to the real property in question is in the defendants and those children who have reached the age of fifty years do not have any vested interest in the property but they have simply a right to compel the defendants to pay to them an equal divided share of the property which can be done only upon a sale of the property, since the property in question cannot be divided in kind, and since it appears further that it was the intention of the testator that the property should be sold and the proceeds divided.

Accordingly, the defendants who have not been discharged as executors and trustees from the performance of their duty in reference to the trust, have a good and marketable title which they must convey in accordance with the terms of the contract in question.

APPEAL by the plaintiffs, Edward A. Jandorf and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Erie on the 29th day of December, 1924, upon the decision of the court rendered after a trial at the Erie Equity Term.

*Shire & Jellinek* [*B. Frank Dake* and *Edward L. Jellinek* of counsel], for the appellants.

*C. DeForest Cummings*, for the respondents.

*Botsford, Mitchell & Albro* [*Preston M. Albro* of counsel], as *amicus curiæ*.

CLARK, J.  The defendants are executors and trustees under the last will and testament of John H. Smith, deceased, late of the city of Buffalo.

The action is brought for specific performance of a contract entered into by the defendants, as such executors and trustees, with the plaintiffs, on the 15th day of February, 1923, for the conveyance to plaintiffs of certain real estate known as premises 515–517–519 Main street in the city of Buffalo, and owned by the said John H. Smith at the time of his death.

The defendants, among several defenses, allege that they have no power to convey three-sevenths interests in the premises because title thereto had previously vested in three of the children of said deceased and that specific performance of the contract could not be decreed.

The trial court adopted that view and dismissed the complaint on the merits.

The last will of said John H. Smith, deceased, after providing for the payment of specific legacies aggregating $15,000 in amount, provided as follows:

" *Seventh.* All the rest, residue and remainder of my property, whether real or personal, I give, devise and bequeath to my

executors hereinafter named, in trust, nevertheless, for the following uses and purposes.

" A. That such of my property as is not now producing rents, income, proceeds, receipts of profits be sold and disposed of by my said executors at such time and occasions as they shall deem for the best interests of my estate, and the avails and proceeds therefrom invested in bonds, mortgages or other safe securities, and the income obtained therefrom, together with the income or revenue from my other property, be paid over to my wife, Jane Smith, when and as she may require it, during the term of her natural life.

" B. From and after the death of my said wife, the income and principal from my estate shall be divided equally between and among my children, or their descendants as follows:

" 1. Upon the first day of January of each year after the death of my wife, the income of my estate shall be equally divided among my children, Eva May Meldrum, Jane Reeves Gething, Wiman Henry Smith, Nellie Caught Bissell, Christina Smith Wende, Louis Graham Owen Smith and Winifred Barbara Smith, until, as each arrives at the age of fifty (50) years, and not until then, he or she shall be paid over and receive an equal divided share of my estate, so that, when and if they arrive at the age of fifty (50) years, each of my said children shall share equally in my estate.

" 2. When and as soon as each of my said children arrives at the age of fifty (50) years and receives his or her share of my estate, his or her interest in and payments out of the income and proceeds of the remainder of my estate shall cease and determine.   *   *   *

" C. When the youngest of my said children then surviving shall reach the age of fifty (50) years, then his or her share shall be turned over to him or her, and my estate thus settled and disposed of.   *   *   *

" *Ninth.* I hereby give and grant to my executors hereinafter named, full power and authority to grant, sell, bargain, alien, lease, mortgage and convey any and all real estate which I may own at the time of my death, as fully as I might do if living."

Under the 10th clause of the will he appointed these defendants executors thereof.

At the time of the death of the testator he left him surviving his widow, Jane Smith, and the seven children above named, all over twenty-one years of age, and they were all living when this action was tried. The widow, however, died in the year 1917.

The will in question was duly admitted to probate in the Surrogate's Court of Erie county, and the defendants qualified as executors thereof, and entered upon the discharge of their duties.

Prior to the 6th day of July, 1916, the defendants as such executors instituted proceedings in the Erie County Surrogate's Court for a judicial settlement of their accounts as such executors, and in that proceeding a decree was finally made in said court judicially settling the accounts of said executors as filed, and it further provided that on said executors filing certain receipts therein referred to, the said executors " hereby are discharged from any further liability in this matter as to all things determined by this decree."

On the 15th day of October, 1918, these defendants instituted a proceeding in the Surrogate's Court of Erie county praying that three accounting proceedings theretofore had by them be consolidated to the end that they could have a decree made judicially settling said accounts.

In their petition defendants set forth their claim of why deeds had not been given to two daughters of decedent who had arrived at the age of fifty years, conveying interests in decedent's real property, the reason assigned being that in the opinion of petitioners title had already vested as to said shares of the children of decedent who had arrived at the age of fifty years.

In said proceeding last above referred to an order was made in said Surrogate's Court consolidating the accounting proceedings referred to in the petition, and the said accounts were finally and judicially settled and the executors discharged.

On the 15th day of February, 1923, the plaintiffs and defendants entered into a contract by the terms of which defendants sold to plaintiffs the premises in question for $442,500, and plaintiffs agreed to pay therefor according to the terms fully set forth in the contract. This contract provided among other things as follows: " It is mutually understood and agreed that this is an Option Contract until such time as the $10,000 payment referred to above is made, and if same is not made on or before February 24th, 1923, this Contract shall become null and void and of no effect. The purpose of the Option being to give the attorney of the parties of the second part time to decide whether executors and trustees deed to the premises is sufficient, and if not sufficient then this contract to be null and void."

The court found that on the 23d day of February, 1923, for a valuable consideration by them received, these defendants extended the time within which plaintiffs could exercise their option to purchase the property in question and make the first payment of $10,000 to March 3, 1923, and that before the time to which the contract had been thus extended had expired plaintiffs duly paid to defendants the sum of $10,000 under the contract.

The court further found that there was no default, negligence or laches on the part of plaintiffs under said contract; that actual partition of the property could not be had without great prejudice to the owners, and that the plaintiffs were ready, willing and able to perform the contract on their part; that the time of its performance was not of the essence of the contract; that plaintiffs offered to perform the contract on their part, but that the defendants refused to perform it on their part.

After making the above findings of fact, the court found as a conclusion of law that the defendants had no power to perform the contract on the theory that they could not convey a marketable title.

The contract provided, among other things, that the defendants should tender to the purchasers a good and marketable title to the premises, and upon payment of the agreed purchase price that they would execute and deliver to the purchasers a good and sufficient executors' and trustees' deed to the premises.

The attorney representing the purchasers after due examination became satisfied that the title defendants could give was sufficient, and after such determination he paid in behalf of plaintiffs the initial payment of $10,000, which defendants accepted on the 1st day of March, 1923.

If the attorney for the purchasers was not satisfied, the contract was by its terms to be null and void, but if he was satisfied with the title defendants could give, they were bound to convey what they contracted to convey, for the clause above referred to was for the benefit of the purchasers, and not the vendors. (*Morris v. Green,* 62 App. Div. 460; 39 Cyc. 1361.)

When the defendants refused to convey any title at all, plaintiffs were in position to demand specific performance. They had the right to compel defendants to convey whatever title they were able to convey, even though it was defective. (*Catholic Foreign Mission Society* v. *Oussani,* 215 N. Y. 1; *Bostwick* v. *Beach,* 103 id. 414; *Farley* v. *Secor,* 167 App. Div. 80, 84; *Feldman* v. *Lisansky,* 239 N. Y. 81.)

This was an option contract, but when plaintiffs paid the $10,000 and paid it seasonably and defendants accepted said payment, then the obligations thereunder became mutual and specific performance thereof could be granted. (*Hamilton College* v. *Roberts,* 223 N. Y. 56.)

In that case the Court of Appeals said: " When a valid option to purchase real property is accepted, the obligations and remedies of the parties become mutual so as to make specific performance a proper remedy."

The defendants under the will of decedent were given the power

of sale of his real estate, and they had the right to make a contract to convey, and when its terms were complied with by the purchasers its terms may be enforced.  (*Bostwick* v. *Beach, supra.*)

Defendants introduced in evidence several decrees of the Surrogate's Court of Erie county in proceedings for judicial settlements of the accounts of the executors, and which decrees purport to discharge the executors from further responsibility, and defendants claim that after the entry of such decrees the executors were without power in the premises.

The first decree concerns personal property only, and nothing affecting title to decedent's real estate was disposed of in that decree.  The clause in the decree discharging the executors related merely to the matters accounted for in the proceeding.  It did not revoke their letters testamentary or vacate their office, and it did not absolve them from performing any future duty as executors.  (*Rosen* v. *Ward,* 96 App. Div. 262; *Matter of Williams,* 165 N. Y. Supp. 716; Surrogate's Court Act, § 274.)

By the will of the testator he left his property to these executors in trust for certain specific purposes, and with power to sell.  Of course that meant that it was conferring a power of sale on his executors for the purpose of carrying into effect the terms of his will.  That document provided that from and after the death of his wife the income and principal from his estate should be divided equally between his children, the income to be divided each year equally between said children, and that when each arrived at the age of fifty years, and not until then, he or she should be *paid over* and receive an equal divided share of his estate.

Then by the 9th clause of the will, full power and authority was granted to the executors to sell, bargain, alien, lease, mortgage and convey any and all of the real estate which decedent might own at the time of his death as fully as he might do if living.  Why was this authority given?  The answer is that it was to confer on the executors the power to sell any of his property and convert it into money and divide the proceeds according to the terms of the will.  The executors derived their interest in testator's real property under a power of sale which was a valid power in trust and was created for the purpose of applying the income derived from the decedent's property and the proceeds from any sales thereof for the purposes stated in the will.  (*Matter of Donlin,* 177 App. Div. 184; Real Prop. Law, §§ 99, 131.)

At any time after the death of the testator the executors could convey a good title to his real estate.  (*Robert* v. *Corning,* 89 N. Y. 225, 238.)

Decedent's property was given to his executors in trust to pay

the income to the widow during her lifetime and thereafter it was in effect to be held by them in as many separate trusts as there were children, with equal annual payments to them of income, and the corpus held until the children should arrive respectively at the age of fifty years, and then, and not until then, any such child so arriving at the age of fifty years should be *paid over* an equal divided share of the estate.

The title to the real estate did not vest in any child attaining the age of fifty years, but any interest of any such child in said property would be subject to the power of sale granted to the executors.

The court has found that the property in question could not be actually partitioned. Under these circumstances, how would it be possible to *pay over* to a child surviving at the age of fifty years his or her share in the property in question, excepting that there should be a sale thereof by the executors, and a division of the proceeds according to the terms of the will?

No conveyance of any portion of this property has ever been made by these executors to testator's children when they arrived at the age of fifty years. This property could not be divided and carry out the scheme of the will, and the only way to accomplish the purposes intended by the testator would be by a sale and a division of the proceeds among the children, as pointed out by the terms of the will.

Of course the intention of the testator must be carried out if it is possible to ascertain from the terms of the will what his intention was. He knew that the property in question was a business block which could not be actually partitioned, and when he said in his will that after the income had been paid over to his wife and children, according to its terms, that on the arrival of any of his children at the age of fifty years they should be *paid over* an equal divided share of his estate, he could not have intended that they should be paid over shares in real property which could not be divided, and he must have intended that the executors when it came time for such division and payment to a child who had attained the age of fifty years should sell his property, as he gave them power to do, and divide the proceeds among the children, and not the property itself.

This construction seems to me to be reasonable, and is sustained by ample authority. In *Crittenden* v. *Fairchild* (41 N. Y. 289) it was held that under a will quite similar to this, the intention of the testator was that the legatees should receive from the executors their bequests in money, and, therefore, the lands must be sold by the executors and the proceeds distributed according to

the terms of the will. Later in the same case (at p. 295) the Court of Appeals in speaking of the disposition of the remainder of that estate said that where there was a power of sale that clearly directs that such disposition be made by the executors, and the power of sale was given to them to carry out that object, there is no question as to the validity of such a provision. (See, also, *Matter of Gantert*, 136 N. Y. 106; *Morse* v. *Morse*, 85 id. 53; *Delafield* v. *Barlow*, 107 id. 535; *Merritt* v. *Merritt*, 32 App. Div. 442.)

On the death of testator, there being a power of sale in the executors, the children even after arriving at the age of fifty years took no vested interest in the real estate, but could enforce the provisions of the trust, compel a sale of the property and a division of the proceeds, but the interests which the children took on arriving at the age of fifty years were subject to the power of sale contained in the will. (*Salisbury* v. *Slade*, 160 N. Y. 278; *Hutkoff* v. *Winmar Realty Company, Inc.*, 211 App. Div. 726.)

The will contained no words of present gift to any of the children. The only present gift of the property was with reference to all his property after paying five specific legacies aggregating $15,000, and that was to the defendants as executors, in trust, however, for the purposes stated in the will.

Testator used no language that would justify the conclusion that he had in mind the vesting of title to the real property in his children when they attained the age of fifty years to the exclusion of the power of sale.

This real estate could not be divided, as found by the court, and the only way a child could be " paid over and receive an equal divided share " of the property would be to have it sold by the executors as directed by the 9th clause of the will and then pay over to the children as they reached the age of fifty years, his or her share of the proceeds.

Defendants' contention that the surrogate's decrees cut off their power to convey decedent's real estate is not consistent with the practical construction that they have heretofore placed on the clause of the will giving them power to sell, for the reason that long after the decrees of the Surrogate's Court discharging the executors had been entered, acting under the power of sale contained in the will, they actually did sell and convey to a country club on the 29th day of May, 1920, about 130 acres of land owned by the testator at the time of his death. At that time defendants evidently considered that the power of sale granted under the will was in full force and that they could give good title. The defendants having refused to convey as they agreed to do under the contract which plaintiffs seek to have enforced, and it appearing

that plaintiffs are satisfied with the title that defendants can give and that they were ready and willing to perform the contract on their part, and that the defendants breached the contract and refused to convey as they had undertaken to do, equity should decree specific performance.

The judgment should be reversed on the law and the facts, with costs in favor of appellants, payable out of the estate, and an interlocutory judgment should be entered in favor of plaintiffs, requiring defendants to specifically perform the contract in question and that the details of the portions of said contract to be performed by the respective parties be determined by the court at a Trial Term thereof, and that upon the decision of such matters by the court, a final judgment be entered requiring defendants to execute a deed of conveyance of the premises in question upon the compliance by the plaintiffs with the terms of the final judgment. The twelfth and thirteenth findings of fact are reversed and this court finds the following additional facts:

12. That there is no fact or reason shown why defendants should not be compelled to perform said contract on their part.

The third, fourth, fifth, sixth, seventh, eighth, ninth and tenth conclusions of law are disapproved and reversed and in the place thereof this court finds conclusions of law as follows:

*Third.* That when defendants entered into said contract with these plaintiffs, the defendants then had and they have at all times since then had, and they do now have, full power and right to convey any estate in the premises described in the complaint of which said John H. Smith died seized.

*Fourth.* That the plaintiffs are entitled to judgment herein, by which the precise sum and the mortgage to which the defendants are entitled under said contract shall be determined and defined; that upon the payment of such sum and upon the delivery of such mortgage to them, the defendants be adjudged to execute as executors of, and as trustees under, the last will and testament of John H. Smith, deceased, a deed of conveyance to the plaintiffs of all the estate, title and interest in and to the premises described in the complaint which the defendants as such executors and trustees can convey.

HUBBS, P. J., DAVIS, SEARS and CROUCH, JJ., concur.

Motion to have certain decrees received in evidence granted. Judgment reversed on the law and facts, and interlocutory judgment directed to be entered in favor of plaintiffs, in accordance with the opinion, with costs to plaintiffs, payable out of the estate. Certain findings disapproved and reversed and new findings made.