### YARDLEY v. HOUGHTON MIFFLIN CO., Inc.

No. 65.

Circuit Court of Appeals, Second Circuit.

Dec. 11, 1939.

Sidney S. Bobbé, of New York City, for appellant.

Allan C. Bakewell and Thomas J. Byrne, both of New York City, for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

Before passing to a consideration of the interesting questions presented by this appeal it is desirable to state in outline the facts that give rise to them. The amended complaint seeks damages for infringement of a registered copyright of a mural picture painted by Charles Y. Turner and placed by him on the wall of the auditorium room of the DeWitt Clinton High School. Mr. Turner executed this painting pursuant to a written contract, dated January 14, 1904, between the City of New York and the general contractor for the erection of the school building, by the terms of which the city was to select the artist and the contractor was to pay him upon a certificate issued by the Superintendent of School Buildings, with the approval of the Committee on Buildings of the Board of Education, and to include such payment in the cost of the building. It is conceded that the mural was accepted and the artist received payment. The written contract between the city and the building contractor was silent as to who was to have the copyright of the painting to be made. Nor is there evidence of any agreement on this subject made by Mr. Turner with either the city or the building contractor. But the painting bears an inscription "Copyright, C. Y. Turner, 1905," and there is nothing to suggest that those words were not on it when it was first in-

stalled in the building. The district judge rightly assumed that they were. The evidence also shows that on October 30, 1905, Mr. Turner, "as author, designer and proprietor" made copyright registration of the picture under R.S. § 4952, as amended by the Act of March 3, 1905, 33 Stat. 1000. The term of such copyright expired October 29, 1933. Mr. Turner died on December 31, 1918, and the plaintiff, Mrs. Yardley, who was one of his surviving sisters, sought and obtained in 1932 a purported renewal of the original copyright. She does not, however, ground her present claim upon such renewal, which is now conceded to be invalid, but upon an assignment of the original copyright, and of rights of action thereunder, executed by her brother's executor in February 1937. The executor, who took office in 1919, served continuously until January 30, 1937, when he was duly discharged by a decree of the surrogate of New York County. Such decree authorized him to transfer to Mrs. Yardley for a consideration of twenty-five dollars, "all existing copyrights of decedent and rights to renewal of those that are renewable, including all benefits that have been and may hereafter be derived therefrom, and all rights of action, if any, thereon." On February 27, 1937, Mrs. Yardley obtained from the executor an assignment of several specified copyrights, including the one in suit, and of all rights of action for infringements thereof, past or present. Shortly thereafter she brought the present suit, charging the defendant with infringement, beginning in 1924 and continuing through subsequent years, by publishing a reproduction of the painting in two history books for school use, which went through several editions. By reason of the statute of limitations the editions complained of were limited upon the trial to those brought out between March 30, 1931 (six years before the date of suit) and the date of expiration of the copyright, October 29, 1933. In answering the complaint the defendant filed a counterclaim which asked for a declaration that the purported renewal of the copyright, which Mrs. Yardley had sought and obtained in 1932, was void. After final hearing the district court dismissed the plaintiff's complaint, sustained the defendant's counterclaim, and awarded costs and a counsel fee to the defendant. From this decree the plaintiff has appealed.

One ground upon which the district court dismissed the complaint was that the surrogate's decree authorizing Turner's executor to transfer to the plaintiff "all existing copyrights of decedent" and all rights of action thereon, did not include the copyright in question because it was not an "existing" copyright, having expired in 1933, and, since the executor's assignment went further than the decree authorized, the plaintiff obtained thereby no valid title to the cause of action sued on. The appellant argues with considerable persuasive force that such an interpretation of the surrogate's decree is too narrow, and that in any event an executor has power to sell and assign personal property of the estate without court authorization [1] and, therefore, effect should be given to the executor's express assignment of the copyright in suit, regardless of what the surrogate's decree authorized. But we find it unnecessary to decide this question because the decision may be supported upon an alternative ground discussed in the opinion of the district judge.

This ground was based on reasoning substantially as follows: When an artist accepts a commission to paint a picture for another for pay, he sells not only the picture but also the right to reproduce copies thereof unless the copyright is reserved to the artist by the terms, express or implicit, of the contract; there was no evidence from which such a reservation could be inferred; therefore the copyright registration in Turner's name, if valid at all, was held in trust for the city, and the latter, through its Board of Education, had given consent to the defendant to publish copies of the painting in its histories; hence there was no infringement. Each of the foregoing findings of fact and conclusions of law is disputed by the appellant.

It seems surprising that so little precise authority has been discovered; only one case exactly in point has been turned up. A fairly close analogy, however, may be found in cases discussing the law of copyright with respect to photographers. The rule has been clearly laid down in this circuit that where a photographer takes photographs of a person who goes or is

---

[1] See Weyer v. Watt, 48 Ohio St. 545, 28 N.E. 670; Pearse v. Nat. Lead Co., 162 App.Div. 766, 147 N.Y.S. 989; Jandorf v. Smith, 217 App.Div. 150, 217 N.Y.S. 145; In re Finlayson's Estate, 140 Misc. 140, 250 N.Y.S. 750.

sent to him in the usual course, and is paid for the photographs and for his services in taking them, the right of copyright is in the sitter or in the person sending the sitter to be photographed, and not in the photographer; but the photographer is entitled to copyright where he solicits the sitter to come to his studio and takes the photographs gratuitously for his own purposes and at his own expense. Lumiere v. Robertson-Cole Distributing Corp., 2 Cir., 280 F. 550, 24 A.L.R. 1317, certiorari denied 259 U.S. 583, 42 S.Ct. 586, 66 L.Ed. 1075; Lumiere v. Pathe Exchange, 2 Cir., 275 F. 428; Press Pub. Co. v. Falk, C.C.S. D.N.Y., 59 F. 324; see also Cory v. Physical Culture Hotel, 2 Cir., 88 F.2d 411, photograph of inanimate object. We think the rule should be the same when a painting is made by an artist. If he is solicited by a patron to execute a commission for pay, the presumption should be indulged that the patron desires to control the publication of copies and that the artist consents that he may, unless by the terms of the contract, express or implicit, the artist has reserved the copyright to himself. Such a presumption must rest on the supposed intention of the parties, and the appellant argues that when the painting is not a portrait and when the patron who commissioned the artist to paint it is not engaged in publication for profit and apparently desired the painting only for decorative purposes, the presumption is not justified. But we think the distinction is too refined to be accepted. It is not unusual for cities or other municipal bodies to publish post card copies or other reproductions of publicly owned works of art. The evidence shows that the painting was one of which the city might well be proud and wish to reproduce, as it represented the first attempt of the Board of Education to beautify the walls of city schools. We believe, therefore, that the general rule is applicable and that the right to copyright should be held to have passed with the painting, unless the plaintiff can prove that the parties intended it to be reserved to the artist. Dielman v. White, C.C.Mass., 102 F. 892.

■ The terms of the contract between the city and the contractor show that an artist was to be commissioned to paint a mural for pay. For reasons already discussed this contemplated that the city should get the copyright as well as the painting. There is no evidence as to the precise terms of the agreement made by Turner when he accepted the employment. In the absence of such evidence we must infer that whatever agent of the city negotiated with Turner did his duty and obtained for the city all that its contract for the building required; in other words, that Turner's contract of employment did not reserve the copyright. His subsequent unilateral act in placing on the painting the copyright notice would be ineffective to modify his contract of employment. It was at most an offer to modify it. The acceptance by city officials of the painting bearing the notice would show acceptance of that offer only if the officials observed the notice and had authority to make a contract modifying Turner's original employment. In both respects the proof is insufficient. As to the former, there is no evidence that the Committee on Buildings, whose approval of the painting was required before the Superintendent of School Buildings should issue his certificate for payment, ever had the inscription called to its attention. If it did come to the Committee's attention, it is entirely possible that the Committee protested to Turner and got his consent to waive his claim of reservation of copyright. The subsequent conduct of the parties is entirely consistent with such a possibility. Turner, so far as appears, never made any copies. During Turner's life time some school official or teacher, whose identity is not clearly proven, caused 30,000 postal card reproductions to be made for sale or free distribution to the students at the school; and after Turner's death, the Board of Education gave permission for publication in the appellee's histories. It is urged that the evidence is insufficient to sustain the court's finding that such permission was given. After so long a lapse of years Mr. Webster could not remember definitely to what official he had applied for permission, but the fact that under the published reproduction the appellee printed the inscription "Copyright, Courtesy New York Board of Education," tends to support an inference that Webster had communicated with the Board and had received its consent. It is urged further that the Board had no legal power to give an effective consent. But whether the consent was effective is immaterial for present purposes. The fact of giving it, regardless of the Board's authority, shows that the Board did not understand that Turner reserved the copyright. But if the opposite view were taken and acceptance of the painting with the copyright notice upon it

we're held to justify an inference that the accepting officials acceded to Turner's proposal to reserve the copyright, the plaintiff must fail for lack of evidence that such officials had legal power to modify the contract. In this respect the case is precisely like Dielman v. White, C.C.Mass., 102 F. 892. There the complainant accepted a commission to design and install a marble mosaic in the reading room of the Congressional Library. The contract of employment was silent as to copyright and the designer placed upon the cartoon and the completed mosaic a notice of copyright in himself. In a well considered opinion Judge Lowell held that the failure of officials in charge of constructing the building to object to the placing of the copyright notice upon the mosaic panel did not bind the government to a construction of the contract contrary to its legal effect, or entitle the complainant to claim a copyright in the absence of any reservation of such right. We believe the case was correctly decided and should be followed by this court. The principles it' announces are conclusive of the case at bar in so far as dismissal of the complaint is concerned. Whether Turner's registration of copyright should be deemed void, because he was not the "proprietor" of the right to apply for it, or should be deemed to be valid but held in trust for the city, we need not decide. On either hypothesis the plaintiff was not entitled to bring the suit.

By its counterclaim the appellee sought a declaration that the renewal copyright registration obtained by the plaintiff in 1932 was void because not effected pursuant to the statute, 17 U.S.C.A. § 24. It is now conceded that only Turner's executor could legally obtain a renewal. Fox Film Corp. v. Knowles, 261 U.S. 326, 43 S.Ct. 365, 67 L.Ed. 680. While the original bill had asserted a claim based upon the renewal, the amended bill did not, and the evidence disclosed that the defendant had ceased publication of its reproduction of the painting in 1936, when notified of the claim of infringement. Hence, the appellant argues that there was no controversy between the parties requiring a declaration of rights as to the renewal copyright. We cannot agree. The counterclaim asserted the invalidity of the renewal and the plaintiff's reply thereto denies the allegations of invalidity. She conceded invalidity at the trial but she had previously asserted rights under the renewal and she might do so again in a subsequent suit, if

its invalidity were not adjudged. There was no error in awarding judgment on the counterclaim.

Judgment affirmed.