11-4803-cv
Buday v. N.Y. Yankees P'ship

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 26th day of June, two thousand twelve.

PRESENT: GUIDO CALABRESI,
            GERARD E. LYNCH,
            RAYMOND J. LOHIER, JR.,
                    *Circuit Judges.*

_____

TANIT BUDAY,
                 *Plaintiff-Appellant*,

         v.                                            No. 11-4803-cv

NEW YORK YANKEES PARTNERSHIP, AN OHIO
LIMITED PARTNERSHIP,
                 *Defendant-Appellee.*

_____

FOR APPELLANT:       Annette G. Hasapidis, South Salem, NY.

FOR APPELLEE:        Brendan J. O'Rourke (Richard M. Goldstein, Kevin S. Blum, *on the brief*), Proskauer Rose LLP, New York, NY.

Appeal from the United States District Court for the Southern District of New York

(Deborah A. Batts, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Plaintiff-appellant Tanit Buday appeals from the district court's judgment granting the motion of the New York Yankees Partnership to dismiss Buday's complaint, which alleged that the Yankees failed to pay her uncle, Kenneth Timur, for a logo that he designed for the team in the 1930s and revised in 1947. The district court concluded that because this suit does not involve a federal question, the court lacked subject matter jurisdiction, and that, even if jurisdiction existed, Buday's complaint failed to state a claim. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

"We review dismissal of a cause of action under Fed. R. Civ. P. 12(b)(1) or 12(b)(6) *de novo*." Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). Dismissal of a case for lack of subject matter jurisdiction is appropriate "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "The party invoking jurisdiction bears the burden of establishing that jurisdiction exists. Where, as here, the case is at the pleading stage and no evidentiary hearings have been held, however, in reviewing the grant of a motion to dismiss under Rule 12(b)(1) we must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009) (internal alterations, citations, and quotation marks omitted). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn."

2

Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992); see also Conyers, 558 F.3d at 143 ("[E]ven on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted)).

Buday argues that the district court erred in dismissing the case for lack of subject matter jurisdiction without first notifying the parties and allowing them to submit "full briefing" on the issue. We agree with Buday that the district court should have notified the parties and allowed briefing on the issue before dismissing her complaint. "A district court should not dismiss an action pending before it without first providing the adversely affected party with notice and an opportunity to be heard." McGinty v. New York, 251 F.3d 84, 90 (2d Cir. 2001). However, when full briefing has been made to us, rather than remanding the case to the district court, we will "undertake to address the issues raised on this appeal ourselves" because "those issues are predominantly of a legal nature," and "we are adequately informed to decide them." Id.

On review of the district court's decision and the arguments of the parties, we agree with the district court that Buday's complaint must be dismissed, although we reach that conclusion for different reasons than those stated by the district court. See Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 405 (2d Cir. 2006) ("[W]e are free to affirm a decision on any grounds supported in the record, even if it is not one on which the trial court relied.").

Buday's original complaint alleged diversity jurisdiction. When the Yankees moved to dismiss on the ground that the parties are not in fact diverse, Buday did not oppose the motion, but instead amended her complaint to allege that the district court "also ha[d]" federal-question jurisdiction. See First Am. Compl. ("FAC") ¶ 7. On appeal, Buday has

abandoned all of her claims except her claim of copyright infringement. The First Amended Complaint alleges that Timur "had a common law copyright" in the Yankees logo, id. ¶ 62, which he orally assigned to Buday at some point "[d]uring the 1960s," id. ¶ 64; see also id. ¶ 63 (alleging that "[t]he assignment of a common law copyright need not be in writing" but "may be oral or implied by conduct"); id. ¶ 65 (alleging that Timur's conduct "suffices to 'imply' an assignment of his common law copyright and related claims to the Plaintiff"). In addition, the First Amended Complaint alleges that Timur "did not register" the logo "as a statutory copyright." Id. ¶ 61. Thus, the factual allegations in the First Amended Complaint allow for no conclusion other than that Buday alleged infringement of a common-law copyright, rather than of a statutory copyright.

In the "Jurisdiction and Venue" section of the First Amended Complaint, however, Buday asserted that the Court had subject matter jurisdiction over her copyright claim "under 28 U.S.C. §§ 1331, 1332(a)(1), and 1338(a) . . . because (i) the deposit, application, and fee required for registration of the [logo] were delivered to the Copyright Office by Plaintiff in proper form, (ii) registration was refused on or about February 21, 2007 and (iii) notice of this action, with a copy of the original and this first amended complaint, have been served on the Register of Copyrights, pursuant to 17 U.S.C. § 411(a)." FAC ¶ 7. Thus, Buday based her assertion of jurisdiction on the existence of a federal statutory copyright claim.

The district court concluded that Buday's common-law copyright claim, "to the extent it is cognizable at all," arises only under state law, presents no federal question, and "does not arise under any Act of Congress relating to copyright." On appeal, Buday argues that the

4

district court failed to recognize that the 1976 Copyright Act "grandfathered in" common-law copyright claims like hers – i.e., those alleging infringement of copyrights on unpublished works that were created before 1978 – and that her claim therefore presents a federal question. Buday is correct that the 1976 Act converted common-law copyright claims into federal statutory claims. Before January 1, 1978, when that Act took effect, unpublished works "were protected by common law copyright" under state law, "but the 1976 Copyright Act preempted the common law of copyright, and brought unpublished works under the protection of federal copyright law, which includes the right of first publication among the rights accorded to the copyright owner." Salinger v. Random House, Inc., 811 F.2d 90, 94 (2d Cir. 1987) (citation omitted). Therefore, contrary to the conclusion of the district court, Buday does indeed claim a copyright based on the provisions of federal law. See Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 355 (2d Cir. 2000) ("When a complaint alleges a claim or seeks a remedy provided by the Copyright Act, federal jurisdiction is properly invoked.").

Unfortunately for Buday, however, the allegations in the complaint conclusively establish that she has no such copyright. First, as noted above, the "grandfathering" provisions of the 1976 Copyright Act apply to the common-law copyright in *unpublished* works. But the factual allegations in Buday's complaint are inconsistent with her characterization of the logo as "unpublished." Buday has alleged facts that establish that the Yankees published the logo prior to the effective date of the 1976 Act. As a result, her complaint fails to allege a plausible claim of any copyright interest in the logo arising under

5

federal law. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).

The First Amended Complaint alleges that neither Buday nor Timur ever published the logo. See FAC ¶¶ 60-62. On appeal, Buday argues that the logo is therefore "unpublished" and should receive "federal statutory protection" under the 1976 Act, and that the allegations in her complaint suffice to establish federal-question jurisdiction. But beyond asserting legal conclusions as to the ownership of the copyright, e.g., id. ¶ 69 ("Plaintiff owns the Yankees Top Hat Logo copyright."), Buday did not allege that the *Yankees* never published the logo. On the contrary, she alleged that the logo is "currently in use by the Yankees," id. ¶ 17; that Timur's sister "presented" the logo to the team and they "accepted it," id. ¶ 18; that the Yankees failed to pay Timur for designing the logo, id.; that Timur knew by 1947 that the Yankees "were using his" logo, id. ¶ 19; that Timur nevertheless agreed to perform further work for the Yankees, and in 1947 revised the logo to celebrate the team's fiftieth anniversary in New York City, id. ¶¶ 20, 26-27; that Timur "took his revised" logo to the Yankees, "showed it to them," and "agreed to transfer" it to them, id. ¶¶ 46, 47; that the team "agreed to remunerate and recognize Timur" for the logo, id. ¶ 47; that when the Yankees again failed to pay him for his work, he "lost his confidence and trust in the Yankees," id. ¶ 64; and that the Yankees have used the logo "on patches on the uniforms of Yankee players," id. 39.

6

Buday's own description of Timur's conduct in the complaint allows for no conclusion other than that he conveyed the logo to the Yankees, no later than 1947, "in a manner which implicitly, if not explicitly, authorized [the Yankees] to publish it," Sanga Music, Inc. v. EMI Blackwood Music, Inc., 55 F.3d 756, 758 (2d Cir. 1995), and that the Yankees published the logo by using it on team jerseys. See Shoptalk, Ltd. v. Concorde-New Horizons Corp., 168 F.3d 586, 590 (2d Cir. 1999) ("Once the author publishes the work, or a third party publishes the work with the consent of the author, the author's common-law right of first publication ends."). Accordingly, Buday has not alleged facts that would permit the conclusion that the logo was unpublished, which would be necessary to bring her copyright claim within the scope of 1976 Copyright Act. Buday's complaint therefore fails to state a claim under the only provision of federal law on which she can rely.

Second, the facts alleged by Buday similarly clearly establish that she never possessed a copyright interest in the logo. Even interpreted in the light most favorable to Buday, the facts alleged in the complaint leave no doubt that the logo was a "work for hire" as defined by the 1909 Copyright Act.[1] The complaint alleges that in 1936 the Yankees

---

[1] We apply the work-for-hire provisions of the 1909 Act, rather than those of the 1976 Act, to Buday's copyright claim, because Buday alleges that the commission, design, and delivery of the logo occurred before January 1, 1978, the effective date of the 1976 Act. The 1976 Act's "language, its legislative history, and generally applicable rules of statutory interpretation all mandate prospective application," and not retroactive application, "of the rules governing work for hire agreements." Roth v. Pritikin, 710 F.2d 934, 937 (2d Cir. 1983); see also Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc., 380 F.3d 624, 636 (2d Cir. 2004) ("[U]nder both the 1909 and 1976 Acts, a person's status as an employee renders a work created within the scope of employment as a work for hire, as to which the copyright belongs to the employer (in the absence of a contract providing otherwise).").

"commissioned" Timur "to create a logo," FAC ¶ 15; that Timur created the logo "[a]s requested by the Yankees," id. ¶ 16; that Timur's sister "presented" the logo to an owner of the team, who "accepted it on behalf of the Yankees," id. ¶ 18; that in 1946 the Yankees "commissioned Timur to revise" the logo "in anticipation of the fact that in 1952 the Yankees would celebrate 50 years based in New York City," id. ¶ 20; and that, in 1947, "[a]gain Timur complied," id. ¶ 21. The only plausible interpretation of the arrangement described in the First Amended Complaint is that of a work-for-hire relationship.

The 1909 Copyright Act created a strong presumption against finding a copyright interest in an employee who created a work on behalf of an employer. See, e.g., Brattleboro Publ'g Co. v. Winmill Publ'g Corp., 369 F.2d 565, 567 (2d Cir. 1966) ("[T]here is a presumption in the absence of an express contractual reservation to the contrary, that the copyright shall be in the person at whose instance and expense the work is done . . . . [The work-for-hire doctrine] is applicable whenever an employee's work is produced at the instance and expense of his employer. In such circumstances, the employer has been presumed to have the copyright."); see also Marvel Characters, Inc. v. Simon, 310 F.3d 280, 291 (2d Cir. 2002) ("Under the 1909 Act, the statutory author of a work created for hire was the employer-publisher."). The work-for-hire doctrine applies not just to standard employee-employer relationships but also to relationships between employers and independent contractors such as Timur. See Brattleboro Publ'g Co., 369 F.2d at 568. "Once it is established that a work is made for hire, the hiring party is presumed to be the author of the work. That presumption can be overcome, however, by evidence of a contrary agreement,

8

either written or oral. The burden of proof is on the independent contractor to demonstrate by a preponderance of the evidence that such a contrary agreement was reached." Playboy Enters., Inc. v. Dumas, 53 F.3d 549, 554-55 (2d Cir. 1995) (citation omitted).

Buday has not pled facts sufficient to meet that burden. She has not alleged the existence of any agreement that would have preserved Timur's copyright interest in the logo and that would have allowed Timur to assign that interest to Buday. Thus, she has failed to allege any fact that could overcome the work-for-hire presumption, and therefore lacks statutory standing to assert a copyright claim against the Yankees.[2] See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82, 91 (2d Cir. 1988) (noting that only the legal or beneficial owner of an exclusive right may assert an infringement claim); see also 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.02.

## CONCLUSION

We have considered Buday's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[2] That the Yankees allegedly failed to pay Timur for his design services does not affect this conclusion. The Yankees' failure to pay could have established a breach-of-contract claim (as Buday in fact alleged in both versions of her complaint, see FAC ¶¶ 91-98, although she has abandoned that claim on appeal), but that alleged breach does not alter the nature of their work-for-hire relationship. See, e.g., Yardley v. Houghton Mifflin Co., 108 F.2d 28, 31 (2d Cir. 1939) ("If [an artist] is solicited by a patron to execute a commission for pay, the presumption should be indulged that the patron desires to control the publication of copies and that the artist consents that he may, unless by the terms of the contract, express or implicit, the artist has reserved the copyright to himself.").