### DIELMAN v. WHITE et al.

#### (Circuit Court, D. Massachusetts. May 31, 1900.)

#### No. 1,133.

1. COPYRIGHT—WORK OF ART EXECUTED ON COMMISSION—RIGHTS OF ARTIST.
   When an artist is commissioned to execute a work of art not in existence at the time the commission is given, there is a very strong implication that such work of art, when executed, sold, and delivered under the commission, is to belong unreservedly and without limitation to the patron, and that he may make or permit, to any extent, reproductions thereof; and the burden rests upon the artist to prove that he retains a copyright therein.

2. SAME—MOSAIC FURNISHED FOR PUBLIC BUILDING.
   Complainant accepted and executed a commission to furnish, deliver, and put in place, complete, two mosaic panels in the reading room of the Congressional Library Building, in Washington, from designs to be made by him. After he had painted the cartoons from which the panels were made, he copyrighted the same, and placed a notice of the copyright thereon, after which the painting was submitted to and approved by the architect in charge of the building; and the same notice was also placed upon the panels themselves, without objection by any officer representing the government. Defendant took photographs of the mosaics after they were in place, with the consent of the officers in charge of the library. *Held*, that the failure of the officers to object to the placing of the copyright notice upon the panels did not bind the government to a construction of the contract contrary to its legal effect, or entitle complainant to claim a copyright in such panels, in the absence of any reservation of such right.

In Equity. Suit to enjoin infringement of copyright.

Alex P. Browne, for complainant.
Fish, Richardson & Storrow, for defendants.

LOWELL, District Judge. This is a suit by the designer of a certain mosaic in the Congressional Library at Washington to enjoin the publication of photographs of the mosaic. On December 22, 1894, Mr. Green, superintendent and engineer of the library, offered Mr. Dielman the commission "to paint, furnish, and put in place, complete," the marble mosaic panel in question; leaving the subject of the design largely to Mr. Dielman's choice. On December 27, 1894,

Mr. Dielman accepted the commission. On February 14, 1895, he submitted to Mr. Green a statement in writing of the composition proposed. On March 30, 1895, in a letter to Mr. Green, he said:

"Under these circumstances, I feel that the best final result can be obtained by my undertaking to furnish you the completed mosaic, and I am therefore prepared to make the contract to that effect."

On April 1, 1895, Mr. Green wrote as follows:

"Washington, D. C., April 1, 1895.

"Mr. Frederick Dielman, 1512 Broadway, New York, N. Y.—Dear Sir: I have just received with pleasure your letter of the 30th ultimo, accepting the offered commission to furnish the two mosaic panels, in translucent tesserae, for the Congressional Reading Room mantels in this building, and now herewith inclose the formal order therefor.

"Very respectfully,         Bernard R. Green,
"Superintendent and Engineer."

The formal order was as follows:

"Washington, D. C., April 1, 1895.

"Mr. Frederick Dielman, 1512 Broadway, New York, N. Y.: Please furnish for this building, deliver, and put in place, complete, two mosaic panels of translucent glass tesserae in the two marble mantels of the W. S. C. Congressional Reading room, in accordance with the letter of December 22, 1894, from this office, and your letter of March 30, 1895, for the gross sum of four thousand dollars ($4,000).         Bernard R. Green,
"Superintendent and Engineer."

On May 9, 1895, Mr. Dielman submitted some sketches. Thereafter he painted a cartoon, and caused the same to be copyrighted in the usual way. This cartoon was sent to Venice, and in that place the mosaic in question was manufactured in the usual manner by workers in mosaic. Both the cartoon and the mosaic bore in the lower left-hand corner these words: "Copyright, 1896, by Frederick Dielman." In 1897 the mosaic, hav' g been sent from Italy, and entered at New York duty free by order of the government, was set in place. The defendant took the photographs which are alleged to infringe, with the knowledge of the officers in charge of the library.

The only question presented in this case is the right of the complainant, by reason of the copyright he took out, to exclude others from photographing the mosaic. No mention whatever of copyright was made in the correspondence, and the only evidence that anything was said to any United States officer concerning the copyright is found in the following answers of the complainant:

"Int. 23. Please state whether or not the painting or cartoon was ever submitted for acceptance to any person representing the United States government in the matter of the erection or decoration of the new library of congress, and, if yes, to whom and when first. Ans. The painting or cartoon, before it was sent to Venice for reproduction in mosaic, was submitted to Edward P. Casey, architect in charge of the Library Building, and was by him accepted. Int. 24. Please state when the putting on of the copyright notice by you was done, with reference to the time of such submission. Ans. The copyright notice was put on the painting before the same was submitted." "Cross Int. 43. Did you make any express contract with the government whereby you reserved the right to copyright your cartoon? Ans. I did not make any express contract, as I understand such to be. Cross Int. 44. Do I understand you to mean that you made any contract at all to that effect? Ans. Only in so far as I was persuaded that the government had no objection to my reserving

the copyright on the design, 'Law,' inasmuch as the placing of the inscription or copyright notice was subject of discussion with a representative of the government, and no objection to my placing the same upon the panel was made." "Redirect Int. 76. Was anything said by Mr. Casey or yourself with reference to the copyright notice which you have testified was put upon your painting or cartoon before it was submitted to Mr. Edward P. Casey? Ans. If I remember rightly, the size of the letters forming that inscription was a subject of discussion."

Taken by itself, the contract seems to me plainly inconsistent with any reservation of copyright on the part of the artist. In general, when an artist is commissioned to execute a work of art not in existence at the time the commission is given, the burden of proving that he retains a copyright in the work of art executed, sold, and delivered under the commission rests heavily upon the artist himself. If a patron gives a commission to an artist, there appears to me a very strong implication that the work of art commissioned is to belong unreservedly and without limitation to the patron. It is not necessary to decide if the artist retains the right to make for another a replica. Reproduction by the artist may be a question of artistic ethics rather than of law; but that the patron has a right to make and permit, to any extent, reproductions of the work of art sold to him, appears to me plain, unless the contrary is plainly set out in the contract. Stating the question in another way, I am convinced that the government could treat the delivery of a copyrighted picture or mosaic as a failure on the complainant's part to carry out the contract he had made. The unrestricted right to produce a work of art thus commissioned is implied in a sale to a nation or a municipality as well as to an individual. It was argued that a reservation of copyright on the part of the artist would tend to defeat offensive reproductions for advertising purposes and the like, but I perceive no force in this argument. If the copyright is retained by the artist, or sold by him to some one else, the owner of the copyright is no more restrained from offensive reproductions than is an outsider, in the absence of copyright. If a restraint upon improper reproduction is desired, the copyright should be vested in the public patron, but considerations of this sort have little bearing upon the construction of the contract now before the court. The case appears to me to be without considerable authority, either direct or by analogy, and the question to be one of reasonable usage commonly understood. In Banks v. Manchester, 128 U. S. 244, 9 Sup. Ct. 36, 32 L. Ed. 425, it was held that a judge cannot take out a copyright in an opinion, statement of the case, and headnote prepared by him in the discharge of his official duty; but the analogy between a judge and this complainant appears to me remote. In Callaghan v. Myers, 128 U. S. 617, 9 Sup. Ct. 177, 32 L. Ed. 547, it was held that an official reporter paid by a state can take out copyright in the matter prepared by him as reporter. The decision was rested largely upon long-established custom, and the court said:

"There is in such case a tacit assent by the government to his exercising such privilege. The universal practical construction has been that such right exists, unless it is affirmatively forbidden or taken away; and the right has been exercised by numerous reporters, officially appointed, made sworn public officers, and paid a salary under the governments both of states and of the United States."

Again, the analogy between a reporter and Mr. Dielman appears to me remote, as does that between Mr. Dielman and the employé in Solomons v. U. S., 137 U. S. 342, 11 Sup. Ct. 88, 34 L. Ed. 667, and in Gill v. U. S., 160 U. S. 426, 16 Sup. Ct. 322, 40 L. Ed. 480. If the commission to produce a work of art ordinarily imports permission to take out a copyright therein, so that the patron may be excluded from reproducing it, then this contract made between the United States and the complainant permitted him to take out a copyright in this mosaic. If, on the other hand, as I believe, the commission to produce a work of art imports unrestricted right of reproduction in the patron, then this contract made between the complainant and the government, in and of itself, imported a denial of the complainant's copyright. See Parton v. Prang, 3 Cliff. 537, Fed. Cas. No. 10,784. It is unnecessary to decide what would be the result of a purchase and sale of a picture, already copyrighted when the contract was first entered into. While, however, an accepted commission to paint a picture ordinarily imports an unrestricted right of reproduction in the patron, it is doubtless possible, by apt expressions in the contract, for the artist to retain the copyright for himself. Here it is urged with much force by the complainant that the patron, the United States, has acquiesced in this, the complainant's construction of the contract. First. Because, when the matter was called to the attention of Mr. Edward P. Casey, he did not object to the copyright. Upon this point the evidence is so slight, and there is such want of proof of authority to bind the government on Mr. Casey's part, that I think the complainant's conversation with him, standing by itself, is entitled to very little weight. Second. Because the United States, by its officers, permitted the placing (indeed, placed for itself) the mosaic in question, bearing the copyright notice. It was further testified by Mr. Wright, a witness for the defendant, that the larger number of the mural works of art in the Congressional Library are marked "Copyright." It seems, therefore, that the United States has permitted the complainant to placard the mosaic in question with a statement that his construction of the contract between him and the government is the correct one, and that the library is pretty thoroughly placarded with like statements of like claims on the part of other artists. These facts are entitled to much weight, and have caused me to doubt gravely if the United States has not acquiesced in the complainant's claim of copyright. The officers in charge of the library, in permitting these inscriptions to remain, have failed in the performance of their duty, unless the complainant's contention is correct; but as they have encouraged the taking of photographs, while permitting the inscriptions to remain, their conduct is, in any case, indefensible. Upon the whole, considering the nature of governments and the habits of governmental officers, which are matters of common knowledge, I do not deem the evidence of acquiescence strong enough to overthrow what appears to me the plain and necessary meaning of the original contract. For these reasons, though with grave doubt, the bill is dismissed, with costs. Bill dismissed.