PICTURE MUSIC, INC., Plaintiff-Appellant,

v.

BOURNE, INC., Defendant-Appellee.

No. 330, Docket 71-1222.

United States Court of Appeals, Second Circuit.

Argued Jan. 31, 1972.

Decided April 3, 1972.

M. William Krasilovsky, New York City (Andrew J. Feinman, Feinman & Krasilovsky, Milton Rosenbloom, O'Brien, Driscoll, Raftery, Rosenbloom & Grainger, New York City, on the brief), for appellant.

Walter S. Beck, New York City (Phillips, Nizer, Benjamin, Krim & Ballon, New York City, on brief), for appellee.

Before HAYS and OAKES, Circuit Judges, and CLARIE, District Judge.*

HAYS, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, which held that appellant had no copyright interest in the song "Who's Afraid of the Big Bad Wolf," and that appellant had infringed appellee's copyright in the song. The opinion of the district court is reported at 314 F.Supp. 640 (S.D.N.Y.1970), and the facts are set out more fully there.

In May, 1933, Walt Disney Productions, Inc. released an animated cartoon film entitled "The Three Little Pigs." The film contained a musical score, portions of which agents of Disney and Irving Berlin, Inc., appellee's predecessor in interest, believed could be adapted as a popular song. With Disney's approval Berlin asked Ann Ronell, appellant's predecessor in interest, to assist in the adaptation; she did so, rearranging the musical themes in collaboration with an employee of Berlin, and arranging the existing lyrics and adding new ones of her own. The trial court found that the new song was revised somewhat by another employee of Berlin and approved by Disney. In exchange for an agreement to pay certain royalties, Disney assigned all its rights in the new song to Berlin,[1] 314 F.Supp. at 643. Disney later agreed that either one-third or one-fourth of its royalties should be paid to Miss Ronell for her services.[2]

In 1960, the twenty-eighth year of the copyright, when the right to apply for a renewal accrued, 17 U.S.C. § 24 (1970), Miss Ronell for the first time asserted a one-half ownership interest in the copyright as a joint author, and obtained registration in her name, while Bourne, Berlin's assignee, registered as "proprietor."[3] In the present action,

---

* Of the District of Connecticut, sitting by designation.

1. Berlin obtained the copyright in the new song in its own name, crediting authorship to Miss Ronell and Frank E. Churchill, the Disney employee who had composed the original song.

2. Miss Ronell claimed that the parties had agreed on one-third, but she eventually dropped the issue and accepted one-fourth of Disney's share from 1933 to 1960. 314 F.Supp. at 643.

3. It is apparently customary for the Register of Copyrights to allow conflicting

appellant, as Miss Ronell's assignee, seeks an adjudication that since 1960 it owned one-half interest in the copyright of the song, together with an accounting of one-half the profits from that date. Appellee has counterclaimed for infringement, alleging as a basis for its claim a new edition of the song published by appellant in 1961. The trial court rejected appellant's claim of ownership and sustained appellee's claim of infringement.

Bourne offered alternative theories in support of its claim to total ownership of the song: (1) that Miss Ronell's contribution was not substantial enough to constitute authorship, and (2) that her contribution was "done for hire," see 314 F.Supp. at 644, and that the "proprietor" was thus entitled to the renewal copyright under Section 24 of the Copyright Act, 17 U.S.C. § 24 (1970).[4] In finding for the appellee, 314 F.Supp. at 647, the trial court appears to have re-

lied principally on the first theory, though it also suggests a theory of assignment in its finding that the conduct of the parties shows that Miss Ronell intended to convey all rights to the work in return for royalties and credits, *id.* at 652–653. Though the trial court discussed the work for hire doctrine, *id.* at 650–651, it did not explicitly rule on that issue.

■■ We affirm the judgment, but do so on the ground that the findings of the trial court establish the conclusion that Miss Ronell's contribution was work done for hire within the meaning of that term as it is used in the statute.[5] In view of this result we need not reach the issue of whether Miss Ronell's efforts were sufficient to make her an author, or whether she assigned her rights.

■ As this Court said in Shapiro, Bernstein & Co. v. Bryan, 123 F.2d 697, 700 (2d Cir. 1941), "when the employer

claimants to register, without making any determination as to the validity of their claims. See Ringer, Renewal of Copyright, in 1 The Copyright Society of the U.S.A., Studies on Copyright 537 (1963).

4. § 24. Duration; renewal and extension
The copyright secured by this title shall endure for twenty-eight years from the date of first publication, whether the copyrighted work bears the author's true name or is published anonymously or under an assumed name: *Provided,* That in the case of any posthumous work or of any periodical, cyclopedic, or other composite work upon which the copyright was originally secured by the proprietor thereof, or of any work copyrighted by a corporate body (otherwise than as assignee or licensee of the individual author) or by an employer for whom such work is made for hire, the proprietor of such copyright shall be entitled to a renewal and extension of the copyright in such work for the further term of twenty-eight years when application for such renewal and extension shall have been made to the copyright office and duly registered therein within one year prior to the expiration of the original term of copyright: *And provided further,* That in the case of any other copyrighted work, including a contribution by an individual author to a periodical or to a cyclopedic or other

composite work, the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors, or in the absence of a will, his next of kin shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years when application for such renewal and extension shall have been made to the copyright office and duly registered therein within one year prior to the expiration of the original term of copyright: *And provided further,* That in default of the registration of such application for renewal and extension, the copyright in any work shall determine at the expiration of twenty-eight years from first publication.

5. We may uphold the judgment on any theory which finds support in the record, regardless of the trial court's conclusions. Helvering v. Gowran, 302 U.S. 238, 245–246, 58 S.Ct. 154, 82 L.Ed. 224 (1937).
In reviewing a determination that a work was or was not done for hire, we are not bound by the "clearly erroneous" standard. Donaldson Publishing Co. v. Bregman, Vocco & Conn, Inc., 375 F.2d 639, 641 (2d Cir. 1967), cert. denied, 389 U.S. 1036, 88 S.Ct. 768, 19 L.Ed.2d 823 (1968).

has become the proprietor of the original copyright because it was made by an employee 'for hire,' the right of renewal goes with it, unlike an assignment." The rationale of this doctrine, which is embodied in Section 24, has been said to be "that the motivating factor in producing the work was the employer who induced the creation . . . ." Note, Renewal of Copyright—Section 23 of the Copyright Act of 1909 [now Section 24], 44 Colum.L.Rev. 712, 716 (1944). See also Brattleboro Publishing Co. v. Winmill Publishing Corp., 369 F.2d 565, 567 (2d Cir. 1966) ("there is a presumption . . . that the copyright shall be in the person at whose instance and expense the work is done."). In the present case appellant itself says in its brief that "arrangements were made through [Berlin] for a copy of the entire musical score of the film cartoon to be forwarded by Disney with the express intention of having Ronell create a popular song inspired by the cartoon."

The purpose of the statute is not to be frustrated by conceptualistic formulations of the employment relationship. In *Brattleboro Publishing Co., supra,* this Court held that advertisements designed and printed by a newspaper, obviously at the "instance" of the advertiser, were done for hire.[6] The Court expressly applied the statutory work for hire doctrine to the case of an independent contractor, 369 F.2d at 568, relying in part on Yardley v. Houghton Mifflin Co., 108 F.2d 28 (2d Cir. 1939), cert. denied, 309 U.S. 686, 60 S.Ct. 891, 84 L. Ed. 1029 (1940), where it was held that one who commissions an artist to paint a mural owns all rights to its reproduction. See also Dielman v. White, 102 F. 892 (C.C.D.Mass.1900), which reached the same result, although the court expressly noted that the "subject of the design [was] largely [the designer's] choice." *Id.* at 892. See Lin-Brook Builders Hardware v. Gertler, 352 F.2d 298 (9th Cir. 1965).

Appellant argues that we have held that "an essential element of the employer-employee relationship, [is] the right of the employer 'to direct and supervise the manner in which the writer performs his work,' " *Donaldson Publishing Co., supra,* 375 F.2d, at 643, quoting Nimmer, Copyright § 62.31 (1964) [now § 62.2 (1971)], and that that "right" is not found in the present case. However, the trial court found that employees of Berlin did in fact make some revisions in Miss Ronell's work. Moreover since Disney had control of the original song on which Miss Ronell's work was based, Disney (and Berlin, with Disney's permission), at all times had the right to "direct and supervise" Miss Ronell's work.

The Court in *Donaldson, supra,* 375 F.2d at 643, listed as among the factors that show that there was no employment for hire, the absence of a fixed salary and the author's "freedom to engage in profitable outside activities without sharing the proceeds with" the alleged employer. *Id.* The absence of a fixed salary, however, is never conclusive, see *Brattleboro Publishing Co., supra;* Nimmer, Copyright § 62.2 (1971), nor is the freedom to do other work, especially in an independent contractor situation, *Brattleboro Publishing Co., supra.* *Donaldson* was quite different from the present case since it involved an author who was the dominant person in the corporation alleged to be his employer. In such a situation it could not be said that his work was done at the "instance" of the corporation.[7]

6. That case involved a construction of the phrase "works for hire" in Section 26 of the Copyright Act, 17 U.S.C. § 26 (1970), but its reasoning is equally applicable to Section 24.

7. Miss Ronell had previously composed works for Disney and Berlin, including "Mickey Mouse and Minnie's in Town" and "Silly Symphony." Appellant claims that Miss Ronell assigned in writing all her interest in these compositions. The absence of a writing in the instant case, however, does not suggest an intent to retain any rights; rather, especially in view of Miss Ronell's 27-year silence, it indicates that she assumed that she had no claim that would need to be assigned.

In short, the "motivating factors" in the composition of the new song, "Who's Afraid of the Big Bad Wolf," were Disney and Berlin. They controlled the original song, they took the initiative in engaging Miss Ronell to adapt it, and they had the power to accept, reject, or modify her work. She in turn accepted payment for it without protest, except as to the amount, for 27 years. That she acted in the capacity of an independent contractor does not preclude a finding that the song was done for hire. We so find, and therefore the right to renew the copyright in the song in 1960 accrued exclusively to appellee, the "proprietor."

Affirmed.

OAKES, Circuit Judge (concurring): I concur in the result.