Barbi SARGENT, Plaintiff,

v.

AMERICAN GREETINGS CORP.,
Defendant.

No. C 82–1465.

United States District Court,
N.D. Ohio, E.D.

May 30, 1984.

Christopher B. Fagan, Patrick R. Roche, Fay & Sharpe, Cleveland, Ohio, for plaintiff.

Charles M. Kennedy, George J. Moscarino, Kathleen B. Burke, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

This action for copyright infringement was initiated by plaintiff Barbi Sargent against defendant American Greetings Corporation on June 7, 1982.

Plaintiff states in her complaint that in 1977 she created original works of art enti- tled "Strawberry Girl." Appended to the complaint are six (6) water color paintings and twelve (12) pencil sketches for which on May 14, 1982 she obtained copyright registration VAu 34–113. Plaintiff essentially claims that defendant has infringed her copyright by manufacturing and marketing various products that display a character entitled "Strawberry Shortcake." Plaintiff also states in her complaint that defendant has licensed the "Strawberry Shortcake" character to various manufacturers for display on a wide variety of products produced by the licensees. She claims that defendant has "aided, abetted, participated in, contributed to, authorized or benefited from the infringing acts" of the various licensees.

In addition to her copyright infringement claim, plaintiff claims that defendant breached a confidential relationship between them and misappropriated her "Strawberry Girl" artwork. She asserts that she has been an independent commercial artist since 1970, and in 1977 presented her "Strawberry Girl" artwork to defendant. She further alleges:

> At the time of the creation of the Strawberry Girl Artwork in 1977, Plaintiff and Defendant were engaged in a business relationship whereby Plaintiff, Barbi Sargent, reposed her trust and confidence in Defendant, American Greetings, for fair dealing in the treatment of her original works by American Greetings. As a result of this business relationship, Defendant, American Greetings, gained a resulting influence and superiority over the Plaintiff, Barbi Sargent, concerning the rights in her original works.

Complaint ¶ 17. The basis of this pendent state law claim is that defendant breached the confidential relationship by misrepresenting to plaintiff the value of her "Strawberry Girl" artwork and then misappropriating to its own use her rights in the "Strawberry Girl" artwork.

In its answer, defendant denies the substance of plaintiff's claims and raises numerous defenses. Defendant also sets forth two counterclaims. In its first coun-

terclaim, defendant avers that plaintiff knowingly made misrepresentations in her application for copyright registration and seeks a declaration that plaintiff's copyright registration VAu 34–113 is invalid. Defendant also asserts that the artwork that is the subject of registration VAu 34–113 is not subject matter copyrightable by plaintiff. In its second counterclaim, defendant avers that in 1977 it created a series of drawings of a character entitled "Strawberry Shortcake" (originally entitled "Strawberry Patches"). Defendant further avers that on and after June 12, 1980 it obtained various certificates of copyright registration for the artwork depicting "Strawberry Shortcake," including registrations TX 480–048, dated June 12, 1980, and TX 709–889, dated June 8, 1981. Defendant claims that after it created detailed line drawings of the "Strawberry Shortcake" character, it "assigned plaintiff to copy said character and drawings and to produce color finishes pursuant to defendant's instructions for the purpose of review and possible purchase by defendant." Defendant asserts that the parties understood and agreed that any artwork produced by plaintiff in connection with her color finish assignments was work made for hire and that all rights vested in defendant. Defendant specifically alleges that the "Strawberry Girl" artwork appended to the complaint was copied from its detailed line drawings and was created by plaintiff in connection with a color finish assignment. The thrust of defendant's second counterclaim is succinctly set forth:

> Plaintiff has threatened to, and on information and belief intends to, infringe defendant's copyrights by selling to others the artwork attached to the Complaint and/or other copies of defendant's Strawberry Shortcake character, and/or by licensing others to use copies of said character on products made or sold by them.

Answer and Counterclaims ¶ 41. Defendant claims it will be irreparably injured in the event plaintiff publishes, assigns, or licenses its "Strawberry Shortcake" character and therefore seeks to enjoin any such publication, assignment, or license.

In her reply to defendant's counterclaims, plaintiff denies the substance of the counterclaims. She also sets forth a number of detailed affirmative assertions concerning her involvement in the development of the "Strawberry Shortcake" character.

With respect to defendant's averment that in 1977 it created a series of wholly original drawings of the "Strawberry Shortcake" character, plaintiff states that she created four (4) pieces of color finished art depicting "Strawberry Shortcake" (then known as "Strawberry Patches") in early July 1977 and that the four pieces of artwork were transferred to defendant on July 7, 1977. Plaintiff further asserts:

> Any drawings allegedly created by Defendant in 1977 and prior to the completion by Plaintiff of her Strawberry Shortcake finished artwork (in July, 1977) were preliminary, rough sketches in black pencil, which did not constitute a creation of Strawberry Shortcake (then known as Strawberry Patches). Plaintiff further states that any finished artwork allegedly created by Defendant prior to the creation of Strawberry Shortcake (then called Strawberry Patches) by Plaintiff in July, 1977, did not constitute a creation of Strawberry Shortcake. [Materials submitted in connection with pending motions indicate that defendant approached two other artists to color the line drawings before contacting plaintiff.] Such finished art was unsatisfactory to Defendant, was rejected by Defendant and was never again used by Defendant. The creation of Strawberry Shortcake by Plaintiff is documented in the invoice of Plaintiff to Defendant dated July 7, 1977 . . . .

Reply to Counterclaims ¶ 6. A photocopy of the July 7, 1977 invoice is appended to the reply as an exhibit.

With respect to defendant's averments concerning its copyright registration of various works of art depicting "Strawberry Shortcake," plaintiff states:

Plaintiff notes that Defendant's copyright Reg. No. TX 480–048 was amplified on July 2, 1981 in Reg.No. TX 714–081. Defendant's Reg. No. TX 480–048 dated June 12, 1980 stated a date of first publication of Strawberry Shortcake as September 18, 1979. That registration also noted that there were no pre-existing works on which the registration was based. This statement was later amplified in Reg. No. TX 714–081 on July 2, 1981 to recite the fact that, among other works, a greeting card identified as "Darling Daughter 25B2437K" constituted pre-existing material that the Strawberry Shortcake publication either incorporated or was based on. [A black and white photocopy of the] published artwork identified as "Darling Daughter" has been [appended to the reply as an exhibit.] Plaintiff states that the "Darling Daughter" finished art was created by her in September, 1973 and that she retained all rights thereto by virtue of her contract dated May 10, 1973 with Defendant, American Greetings.

Reply to Counterclaims ¶ 7. The May 10, 1973 contract is appended to the reply as an exhibit.

With respect to defendant's claim that it assigned plaintiff to copy its detailed line drawings of the "Strawberry Shortcake" character and to produce finished color artwork, plaintiff states that in June 1977 she received such an assignment. She asserts that the assignment was completed in early July 1977 and that she tendered to defendant on July 7, 1977 four (4) "leader cards" depicting the "Strawberry Shortcake" character in full color. (Leader cards are used by defendant for consumer test purposes.)

Plaintiff further states:

The right and title to the Strawberry Shortcake (then known as Strawberry Patches) artwork and the Strawberry Shortcake character created by the leader card project are governed by the Agreement between the parties dated May 1, 1976 .... The [May 1, 1976 agreement] follows in time earlier Agreements entered into by the parties dated May 10, 1973 and April 1, 1970 .... Whereas, the 1970 Agreement provided, at paragraph 5, that American Greetings purchased the exclusive copyright rights of the Plaintiff in each original finished design executed by the Plaintiff, the 1973 and 1976 Agreements provided for no such transfer of copyright. Rather, the 1973 and 1976 Agreements provided a reservation of rights by Plaintiff. At the time of the creation of Strawberry Shortcake (then known as Strawberry Patches) in 1977 by Plaintiff, there was no Agreement in force between the parties other than that dated May 1, 1976 .... The check endorsement [that defendant asserts effected a transfer of all rights in plaintiff's "Strawberry Girl" artwork to it] was neither an extension of or a substitution for the Agreement of May 1, 1976. The check endorsement was, in fact, ignored by *both* Plaintiff and Defendant insofar as their business dealings. Contrary to the assertions of Defendant, the 1977 leader card project was not a "work made for hire" but, rather, was governed by the [May 1, 1976 agreement], which provided a reservation of rights in the Plaintiff.

Reply to Counterclaims ¶ 9 (emphasis in original) Plaintiff further addresses defendant's assertions of originality and her assignment to produce finished color artwork:

Plaintiff states that whatever black pencil line drawings were allegedly provided Plaintiff prior to her completion of the leader card assignment in July, 1977, constituted nothing more than preliminary, rough sketches. Such rough sketches did not constitute a creation of Strawberry Shortcake. The birth of Strawberry Shortcake occurred in early July, 1977 when the four (4) leader cards of Plaintiff were delivered to Defendant and immediately accepted by Defendant. Defendant has, itself, acknowledged the creation of Strawberry Shortcake by Barbi Sargent in its copyrighted publication entitled, *"Strawberry Shortcake—The First $100 Million"*.

*Id.* Plaintiff then quotes excerpts from the publication, which is appended to the reply as an exhibit and which is the subject of defendant's copyright registration TX 709–889, dated June 8, 1981. Lastly, plaintiff asserts that the "Strawberry Girl" artwork appended to her complaint was completed by her in December 1977 and incorporated the "Strawberry Shortcake" (then known as "Strawberry Patches") character she had created in July 1977.

The following four motions are pending, each of which shall be addressed separately: 1) Defendant's motion for summary judgment; 2) Defendant's renewed motion for preliminary injunction; 3) Plaintiff's motion for leave to file an amended complaint; and 4) Plaintiff's motion to have "Strawberry Shortcake" licensing income placed in escrow.

## I. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The primary thrust of defendant's motion for summary judgment on plaintiff's copyright infringement claim is that plaintiff's artwork is not copyrightable by her. Defendant advances three reasons why plaintiff has no copyrightable interest in her artwork and argues that each of the reasons is alone sufficient to defeat her claim.

Defendant first asserts that plaintiff's artwork is not original with her because she copied the "Strawberry Shortcake" character from artwork provided to her by defendant. Defendant maintains that it conceived and created the "Strawberry Shortcake" character prior to any involvement by plaintiff and that plaintiff's alleged contributions, which were essentially color, are not copyrightable subject matter as a matter of law.

Federal copyright law underwent a general revision with the passage of the Copyright Revision Act of 1976, 17 U.S.C. § 101, *et seq.* (the "New Act"). The New Act, which became effective on January 1, 1978, replaced the Copyright Act of 1909 (the "Old Act") and various principles of common law copyright. With respect to certain issues raised in defendant's motion for summary judgment, the parties dispute whether the Old Act or the New Act governs; in connection with those issues the question of which of the Acts governs will be addressed. With respect to originality, however, the New Act "incorporate[d] without change the standard of originality established by the courts under the [Old Act]." House Report No. 94–1476, 94th Cong., 2d Sess. 51, *reprinted in* [1976] U.S.Code Cong. & Ad.News 5659, 5664. Moreover, based on the precedent cited in the parties' briefs, it appears that for the most part they essentially agree on the standard to be applied in resolving the originality issue. Their disagreement centers on the application of the standard.

The cases discussed in the parties' briefs focus on the standard of originality necessary to support a copyright in a "derivative work." The New Act specifically defines "derivative work":

> A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

17 U.S.C. § 101. The genesis of the standard may be found in the opinion of the United States Court of Appeals for the Second Circuit in *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir.) (en banc), *cert. denied* 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976). In *Batlin*, the defendant-appellant had arranged for the design and manufacture of a plastic Uncle Sam bank. The plastic bank was based on a cast metal Uncle Sam bank that was in the public domain. The plaintiff-appellee, who was also in the novelty business, had also arranged for the manufacture and import of a plastic Uncle Sam bank. When the

United States Custom Service notified the plaintiff-appellee that its plastic banks were covered by the defendant-appellant's copyright, the plaintiff-appellee initiated suit to have the defendant-appellant's copyright declared invalid. The Second Circuit affirmed the grant of a preliminary injunction restraining the enforcement of the defendant-appellant's copyright and requiring the defendant-appellant to cancel the recordation of the copyright with the Customs Service.

The standard for originality upon which the Court relied was expressly articulated:

> Originality is, however, distinguished from novelty; there must be independent creation, but it need not be invention in the sense of striking uniqueness, ingeniousness, or novelty, since the Constitution differentiates "authors" and their "writings" from "inventors" and their "discoveries." .... Originality means that the work owes its creation to the author and this in turn means that the work must not consist of actual copying .... The test of originality is concededly one with a low threshold in that "[a]ll that is needed ... is that the 'author' contributed something more than a 'merely trivial' variation, something recognizably 'his own.'"

536 F.2d at 490 (citations and footnote omitted). The Court concluded that the differences between the cast metal bank and the defendant-appellant's plastic bank were trivial variations inherent in and attributable to the translation to the medium of plastic from the medium of metal. Therefore, the plastic bank could not be copyrighted. The Court stated:

> [T]o support a copyright there must be at least some substantial variation, not merely a trivial variation such as might occur in the translation to a different medium.

*Id.* at 491.

In *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir.1980) the Second Circuit applied the originality standard set forth in *Batlin* to derivative works based on copyrighted preexisting works.

630 F.2d at 909. The Court set forth the following test:

> [T]o be copyrightable a work must "contain[ ] some substantial, not merely trivial, originality ...."

> Although novelty, uniqueness and ingenuity are not required, independent creation is ... Independent creation, in turn, means that a work must not consist of actual copying .... This test of originality, which has been aptly characterized as "modest," "minimal," and as establishing a "low threshold," is the *sine qua non* of copyrightability ....

> Particularly important for decision of the case before us is the explicit rejection in *Batlin* of the contention that the originality requirement of copyrightability can be satisfied by the mere reproduction of a work of art in a different medium, or by the demonstration of some "physical" as opposed to "artistic" skill.

*Id.* at 910 (citations omitted). The Court affirmed a grant of summary judgment in favor of the plaintiff on the defendant's counterclaims for infringement. The basis of the decision was that the plaintiff's plastic wind-up toys, which depicted various Walt Disney characters, lacked the necessary originality to support a copyright.

> Thus, the mere reproduction of the Disney characters in plastic, even though the adaptation of the preexisting works to this medium undoubtedly involved some degree of manufacturing skill, does not constitute originality as this Court has defined the term.

*Id.*

In *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27 (2d Cir. 1982) the Second Circuit applied the standard developed in *Batlin* and *Durham* to a fictional cartoon character. Eden Toys, Inc. (Eden) brought suit for the infringement of a derivative work of a now-famous children's character identified as "Paddington Bear." As the exclusive licensee of the original character, Eden had created a chain of two derivative works. Illustrations of the three levels of artwork are set forth in the Court's opinion. 697 F.2d at

31–32. Among Florelee's defenses to Eden's claim of infringement of the third level artwork (the "Eden/Gibson Drawing") was lack of originality. The district court had concluded that Eden's copyright in the "Eden/Gibson Drawing" as a derivative work was invalid because the variations from the preexisting work were too insignificant to qualify the drawing as original. In reversing the district court's entry of summary judgment against Eden, the court stated:

[T]he district court applied a test that erroneously mingled the standard for sufficient *originality* and the test for *infringement*. The standard for sufficient originality is whether a work contains "some substantial, not merely trivial, originality." .... The standard for copyright infringement, by contrast, is whether the defendant's work is "substantially similar" to the plaintiff's work ....

The difference between these two tests is not merely academic. A work which makes non-trivial contributions to an existing one may be copyrighted as a derivative work and yet, because it retains the "same aesthetic appeal" as the original work, render the holder liable for infringement of the original copyright if the derivative work were to be published without permission from the owner of the original copyright.

*Id.* at 34 (citations omitted; emphasis in original). Applying the standard for originality, the Court held that the derivative works were sufficiently original to support Eden's copyright:

The numerous changes made by Gibson—the changed proportions of the hat, the elimination of individualized fingers and toes, the overall smoothing of lines— combine to give the Eden/Gibson drawing a different, cleaner "look" than the Ivor Wood sketch on which it is based. Such a contribution satisfies the minimal requirements of originality for registration under the Copyright Act.

*Id.* at 35, *citing Durham Industries v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980).

Defendant's position is that at the time of plaintiff's assignment, it provided her with detailed pencil line drawings, color samples, and instructions concerning color. It argues that plaintiff copied the line drawings and followed its color instructions and that her artwork is therefore "no more original ... than is a colored-in 'paint-by-numbers' canvas." Defendant also maintains that plaintiff's addition of color to the pencil line drawings is, as a matter of law, a "trivial variation" within the meaning of the above-mentioned cases. Lastly, defendant argues that "color *per se* does not constitute copyrightable subject matter as a matter of law because colors are, by their very nature, in the public domain and available for use by all."

Although defendant correctly points out that color is in the public domain, its assertion that color is therefore *per se* eliminated from consideration when evaluating originality is incorrect. In *Pantone, Inc. v. A.I. Friedman, Inc.*, 294 F.Supp. 545 (S.D.N.Y.1968), the plaintiff had developed a color matching system that was embodied in a copyrighted booklet entitled "Pantone Matching System." The system was designed to coordinate communications between artists, manufacturers, designers, and printers with respect to color. The goal of the system was to prevent errors and to insure understanding and proper reproduction of shades of colors for specific uses and media. The court described the plaintiff's booklet:

It consists of 72 pages, each bearing a series of bands of carefully selected colors which are arranged in a fashion or plan designed, through variation of certain basic colors, to provide an extensive range of selection derived from use of eight basic colors plus black and transparent white. Plaintiff's selection of the eight basic colors and of blends of these colors to provide a range of acceptable color values, presented in attractive gradations moving from one basic hue and

its variations into another, was the product of a great deal of effort which required careful consideration of numerous artistic factors including the aesthetic attributes of each shade and its use in the commercial art field.

294 F.Supp. at 547. The Court reviewed several decisions setting forth the requisite standard for originality and articulated its understanding of the test:

> [T]he test for determining copyrightability is originality (i.e., independent creation or individuality of expression) rather than novelty, and that originality of even the slightest degree, even if it amounts to no more than a re-arrangement of age-old ideas, is sufficient.

Id. at 548 (citations omitted). Applying the test, the court accepted the plaintiff's argument and concluded that the arrangement and mode of expression embodied in the booklet constituted sufficient originality to qualify it for copyright:

> Although the mere portrayal of a series of gradations of color shades, standing alone, would present a doubtful case for copyright protection, the arrangement here possessed the already described unique quality ....

Id. It therefore appears that an original method of organizing or arranging matters in the public domain is copyrightable. See also Trebonik v. Grossman Music Corp., 305 F.Supp. 339, 345–46 (N.D.Ohio 1969) (Lambros, D.J.; Copyright infringement action in which this Court concluded that the plaintiff's original method of organization and depiction of guitar chords in a dial-type teaching device was copyrightable.) Defendant's argument that color is per se excluded from consideration in evaluating originality is rejected.

▆ With respect to defendant's position that plaintiff's addition of color to the preexisting pencil line drawings constitutes trivial variations as a matter of law, it appears that defendant argues that the differences between the pencil line drawings and the full color finish artwork are inherent in and attributable to the color used by plaintiff. There is no question that changes from a preexisting work inherent to construction in a new medium, i.e. changes that are not attributable to independent artistic skill and endeavor, are trivial variations and are not copyrightable. L. Batlin & Son, Inc. v. Snyder, supra. The evidentiary materials submitted in connection with defendant's motion indicate that defendant rejected the color finish artwork of two color artists before approaching plaintiff. Therefore, it cannot be said that the color embodied in plaintiff's artwork is inherent to the medium in which she and the two previous color artists worked. Furthermore, whether a change from a preexisting work constitutes a trivial variation presents a factual question. Eden Toys, Inc. v. Florelee Undergarment Co., Inc., 697 F.2d at 35. Although the appellate court in Eden Toys resolved the factual question itself, this is an action in which plaintiff has demanded a trial by jury. Inasmuch as it is the province of the jury to resolve issues of fact, this Court concludes that there exist questions of material fact for trial concerning the originality of plaintiff's artwork.

The second ground upon which defendant moves for summary judgment on the infringement claim is that plaintiff's artwork was "work made for hire" and that the copyright to the artwork was at all times vested in defendant. A threshold question that must be resolved before examining the merits of this issue is whether the Old Act or the New Act governs. Plaintiff argues that the New Act applies, while defendant's position is that the Old Act is applicable.

Plaintiff's position is predicated on § 301 of the New Act:

> (a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, *whether created before or after that date* and whether

published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State. 17 U.S.C. § 301(a) (emphasis added). Plaintiff essentially argues that because the alleged infringing activities upon which this action is based took place after January 1, 1978, her claims are governed by the New Act, including its provisions governing works made for hire.

In *Roth v. Pritikin*, 710 F.2d 934 (2d Cir.1983), the Second Circuit specifically addressed the retrospective application of the work made for hire provisions of the New Act. June Roth, a free-lance writer specializing in food and health matters, had been approached by a free-lance journalist named Patrick McGrady to explore whether she would be interested in creating recipies for a book McGrady was writing about Nathan Pritikin's diet and exercise program. The parties reached an agreement that Roth would receive a $3,000.00 flat fee, and in October 1977 she delivered the recipies. Published in the Spring of 1979, the book was entitled *The Pritikin Program for Diet & Exercise.* The book was a success, and Roth sought additional compensation from McGrady. After refusing an offer for an additional $2,000.00, Roth initiated suit, claiming that she had never entered into a valid contract for the sale of the recipies and, alternatively, that any agreement was rendered invalid by the passage of the New Act. Roth particularly relied on § 301(a) of the New Act to support her position concerning retrospective application. The district court, following a non-jury trial, found that the contract was valid and concluded that Roth had no copyright interest in the recipies pursuant to the law governing works made for hire extant at the time of the agreement. The Second Circuit affirmed the decision of the district court not to apply the work made for hire provisions of the New Act retrospectively:

> Fairly read, § 301 merely provides the rights accruing to the owner of a copyright, those ."specified in section 106,"

are defined pursuant to the 1978 Act, rather than prior law. Whoever holds an interest in a copyright on or after January 1, 1978, has a right to the protections afforded by the new statute, although the creative work may previously have been governed by the 1909 Act or the common law. Section 301 does not, however, purport to determine who holds a copyright for works created before January 1978. It merely clarifies the rights of individuals owning copyrights on that date, whomever they may be.

710 F.2d at 938.

Having evaluated the parties' arguments concerning the retrospective application of the work made for hire provisions of the New Act, and in particular the decision of the Second Circuit in *Roth*, this Court concludes that the Old Act governs the work made for hire issue in this action.

With respect to the merits of the work made for hire issue, defendant's primary position is that plaintiff was its employee and that the copyright to her artwork vested in it by operation of law. Alternatively, defendant assumes *arguendo* that plaintiff was an independent contractor and argues as follows: 1) work performed by an independent contractor may constitute a work made for hire; 2) two factors determine whether the work of an independent contractor is a work made for hire—(a) that the work is created at the behest of the hiring party, and (b) that the hiring party has the power to direct and control the manner of the independent contractor's work—; and 3) plaintiff could retain the copyright to her artwork only by an express contractual provision, which defendant asserts she has not done.

Defendant cites several decisions for the proposition that when one engages an independent contractor to create a work of an artistic nature, in the absence of an express contractual reservation of the copyright in the independent contractor, a presumption arises that the mutual intent of the parties is that the copyright vests in the commissioning party. *E.g., Murray v. Gelder-*

*man,* 566 F.2d 1307 (5th Cir.1978); *Picture Music, Inc. v. Bourne, Inc.,* 457 F.2d 1213 (2d Cir.1972); *Brattleboro Publishing Co. v. Winmill Publishing Corp.,* 369 F.2d 565 (2d Cir.1966); and *Lin-Brook Builders Hardware v. Gertler,* 352 F.2d 298 (9th Cir.1965). The genesis of the proposition for which defendant cites the above-mentioned cases may be found in *Yardley v. Houghton Mifflin Co., Inc.,* 108 F.2d 28 (2d Cir.1939).

In *Yardley,* the plaintiff's deceased brother had been commissioned by the City of New York to paint a mural on a wall of a newly-constructed high school. The written contract between the plaintiff's deceased brother and the City made no mention of copyright ownership, and the plaintiff was claiming ownership as an assignee of her deceased brother's estate. The court set forth the general rule of law it considered applicable:

> If [an artist] is solicited by a patron to execute a commission for pay, the presumption should be indulged that the patron desires to control the publication of copies and that the artist consents that he may, unless by the terms of the contract, *express or implicit,* the artist has reserved the copyright to himself.

108 F.2d at 31 (emphasis added). After recognizing that the terms of the agreement pursuant to which the plaintiff's deceased brother had painted the mural were not in evidence and could not be ascertained, the court applied the presumption:

> There is no evidence as to the precise terms of the agreement made by [plaintiff's deceased brother] when he accepted the employment. *In the absence of such evidence* we must infer that whatever agent of the city negotiated with [plaintiff's deceased brother] did his duty and obtained for the city all that its contract for the building required; in other words, that [plaintiff's deceased brother's] contract of employment did not reserve the copyright.

*Id.* (emphasis added). Of the decisions cited by defendant, only in the *Brattleboro Publishing Co.* case did the court correctly recognize that the presumption established in *Yardley* applies only in the absence of evidence of the parties' intent:

> [The work made for hire doctrine] is applicable whenever an employee's work is produced at the instance and expense of his employer. In such circumstances, the employer has been presumed to have the copyright....
>
> We see no sound reason why these same principles are not applicable when the parties bear the relationship of employer and independent contractor. "Whether the copyright resides in the person thus commissioning the work or in the independent contractor creating the work will always turn on the intention of the parties where that intent can be ascertained." [Nimmer on Copyright 244 (1964)] *Where that intent cannot be determined,* the presumption of copyright ownership runs in favor of the employer. Ibid.

*Brattleboro Publishing Co. v. Winmill Publishing Corp.,* 369 F.2d at 567–68 (certain citations omitted; emphasis added). The court proceeded to discuss the *Yardley* case as an example of a situation in which the parties' intent could not be determined.

Upon a careful study of the *Yardley* decision and its progeny, it becomes clear that the presumption on which defendant predicates its argument operates only in the event it is not possible to ascertain the express or implied contractual intent of the parties. Furthermore, the United States Court of Appeals for the Sixth Circuit has specifically articulated the rule in this circuit:

> An author is not necessarily precluded from copyrighting a work produced under contract with another person; *the intent of the parties as to which of them shall have the right to copyright is decisive.* Where a contract of employment is silent, there may be an implication in favor of the employer. But in the present case plaintiff was an independent contractor, rather than an employee; moreover, it may properly be inferred that the parties did not intend plaintiff to

surrender a copyright in consideration of a sum less than the bare cost of the work.

*W.H. Anderson Co. v. Baldwin Law Pub. Co.*, 27 F.2d 82, 88 (6th Cir.1928) (emphasis added).

This is not a situation in which the intent of the parties cannot be ascertained. Plaintiff and defendant had a contractual business relationship for several years. The relationship spanned several contracts, and the parties have submitted considerable evidence concerning their relationship and the nature of their relationship. Having reviewed this evidence, this Court concludes that there exist questions of material fact for trial concerning the precise nature of the parties' business relationship. In addition, there exist questions of material fact for trial concerning the parties' intent with respect to the ownership of the copyright to plaintiff's artwork and whether the parties intended plaintiff's artwork to be considered work made for hire.

The third basis upon which defendant moves for summary judgment on plaintiff's copyright infringement claim is that plaintiff assigned to defendant any copyright interest she may have had in her artwork. Defendant argues initially that the sale of the artwork operated as an assignment of the copyright in the artwork. Defendant also argues that plaintiff assigned both the artwork and the copyright by virtue of an endorsement that appeared on the checks plaintiff received from defendant.

Defendant relies primarily on *Yardley v. Houghton Mifflin Co.*, 108 F.2d 28 (2d Cir.1939) (cited above in connection with defendant's work made for hire argument) and *Franklin Mint Corporation v. National Wildlife Art Exchange, Inc.*, 195 U.S.P.Q. 31 (E.D.Pa.1977) for the proposition that a sale of artwork operates as a transfer of the seller's copyright interest in the artwork. As previously noted, in *Yardley*, the plaintiff's deceased brother had been commissioned by the City of New York to paint a mural. The plaintiff was claiming a copyright interest in the mural as an assignee of her deceased brother's

estate. After concluding that there was no evidence concerning the terms of the agreement between the plaintiff's deceased brother and the City, the Court applied the rule that, absent an express or implied contractual reservation of the copyright in the artist, the copyright in the artwork is presumed to vest in the commissioning party. As part of its articulation of the general rule of law it applied, the court stated:

We believe, therefore, that the general rule is applicable and that the right to copyright should be held to have passed with the painting, *unless the plaintiff can prove that the parties intended it to be reserved to the artist. Dielman v. White*, C.C.Mass., 102 F. 892.

108 F.2d at 31 (emphasis added). As noted above in connection with defendant's work made for hire argument, this action presents a situation in which there exist questions of material fact with respect to the parties' intent concerning copyright ownership. Therefore, it cannot be said that, as a matter of law, the copyright in plaintiff's artwork is vested in defendant pursuant to the rule articulated in *Yardley*.

In the *Franklin Mint* decision, the dispute focused on the ownership of the copyright in a water color painting entitled "Cardinals on Appleblossom." The artist orally agreed with the commissioning party to prepare a water color painting of cardinals with the understanding that the commissioning party, if he did not approve of the painting, would have no financial obligation to the artist. On August 25, 1972 the commissioning party approved the painting and delivered a check made payable to the artist in the amount of $1500.00. The following legend was placed on the back of the check by the commissioning party: "For Cardinal painting 20 × 24 including all rights—reproduction, etc." On August 26, 1972 the artist and the commissioning party met to discuss further the details of their proposed transaction. The commissioning party made a series of notes during the meeting, and he was to present the notes to his lawyer so that a formal agreement could be drafted. The draft

agreement was then to be reviewed by the artist's lawyer. On August 28, 1972 the artist endorsed the check, including the legend, and deposited it. The formal agreement that was to have been prepared from the commissioning party's notes was never consummated.

Defendant correctly points out that during its discussion the court in *Franklin Mint* stated, "Except in California and New York, it is generally accepted that purchase of a work of art includes all rights to copyright unless otherwise specified. Nimmer on Copyright, Page 541 (1976 ed.)." Nevertheless, the court recognized Professor Nimmer's criticism of such a rule and in substance focused on the parties' intent as evidenced by the check endorsement:

> Although [the artist] testified that he intended to reserve copyrights in himself, he either should have done so by specific written agreement or not negotiated the check with the above-quoted endorsement which specifically included "all rights-reproduction".... While [the artist] denies that he knew of the endorsement when he accepted the check and testified he first learned of it on August 28, 1972, he still could have protected himself by insisting on a check from [the commissioning party] without the endorsement or with a clarified endorsement. ... Therefore, I find as a fact and conclude that entitlement to all copyrights to "Cardinals on Appleblossom" passed to [the commissioning party] by virtue of the $1,500 check and the endorsement contained on the reverse side.

195 U.S.P.Q. at 36. It is apparent that in *Franklin Mint* the check endorsement was the sole manifestation of the parties' intent concerning copyright ownership. The court recognized that the endorsement transferred "all rights" in the painting and reached its conclusion accordingly. In this action, however, the check endorsement involves only the "exclusive right to publish." Furthermore, as previously noted, there exist a series of contracts between plaintiff and defendant with respect to their business relationship. The contracts, the check endorsements, and the relationship between the contracts and the check endorsements present questions of material fact with respect to the parties' intent concerning copyright ownership.

Defendant has also moved for summary judgment on plaintiff's pendent claim for breach of a confidential relationship and misappropriation. Defendant essentially argues that such a claim is preempted by § 301(a) of the New Act. The preemption provision of the New Act preempts and abrogates all legal and equitable rights arising under the common law or state statutes that are equivalent to any of the exclusive rights within the general scope of copyright in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright, whether created before or after January 1, 1978. 17 U.S.C. § 301(a); *Mitchell v. Penton/Industrial Publishing Company, Inc.*, 486 F.Supp. 22 (N.D.Ohio 1979) (Thomas, J.).

As plaintiff points out, however, it is necessary to read § 301(a) of the New Act in connection with the provisions of § 301(b) of the New Act. Plaintiff specifically relies on § 301(b)(3) to support her position that the pendent claim is not preempted:

> (b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—
>
>   \*    \*    \*    \*    \*    \*
>
> (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

17 U.S.C. § 301(b)(3). Plaintiff essentially argues that her breach of confidential relationship and misappropriation claim involves violations of rights that are distinct from the exclusive rights enumerated in § 106 of the New Act.

It appears that plaintiff's pendent claim is recognized in Ohio, is not redundant, and involves elements that distin-

guish it from her claim for copyright infringement. *Smith v. Patterson*, 33 Ohio St. 70 (1877). Plaintiff's claim for breach of confidential relationship and misappropriation is therefore not preempted by the New Act.

■ Alternatively, defendant assumes *arguendo* that the pendent claim is not preempted and argues that summary judgment should be entered in its favor on the merits of the claim. Defendant's position is that the evidence is uncontroverted and that there is no question that it neither breached a confidential relationship nor misappropriated plaintiff's artwork. As previously noted, however, there exist questions of material fact concerning the nature of the relationship between the parties.

For the foregoing reasons, defendant's motion for summary judgment is denied.

## II. DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, defendant American Greetings has moved to enjoin various courses of conduct on the part of plaintiff Barbi Sargent.

Portions of the discovery undertaken in this action have been performed pursuant to a stipulated protective order filed on August 30, 1982. The first paragraph of the protective order generally provides that artwork and other materials exchanged by the parties during discovery "shall be retained by such counsel and shall be used by such counsel for the purposes of trial preparation and trial of this action and shall not be used for any other purpose...." The second paragraph carves out a specific exception for plaintiff's leader card artwork:

Copies of three pieces of artwork to be produced by defendant pursuant to pretrial discovery and identified by defendant as "Strawberry Patches Leaders (Barbi Sargent Finish)" shall also be subject to the restrictions of Paragraph 1 with the exception that plaintiff is not prohibited from filing an application for copyright registration as to said pieces of artwork provided that, prior to the filing of any such application, plaintiff has given notice to defendant of her intent to file said application and the Court has ruled in plaintiff's favor on defendant's motion for protective order or other application to oppose or prevent plaintiff's use of said copies for the filing of such an application. Plaintiff is not prohibited from filing such a copyright application in the absence of a Court order in its favor if defendant has not, within thirty days after receiving plaintiff's notice, moved or applied to the Court for a protective order or other order to prevent plaintiff's use of said copies for the filing of such an application. Nothing in this Paragraph shall prevent defendant from moving for such a protective or restrictive order prior to receiving any notice from plaintiff of her intent to file for copyright registration.

On September 7, 1982 plaintiff formally notified defendant of her intent to register the leader cards, and defendant timely moved to enjoin any such registration. In addition, defendant has supplemented its original motion for a preliminary injunction and also seeks to enjoin plaintiff "from registering or attempting to register with the United States Copyright Office any artwork, or copies of artwork, produced by her pursuant to assignment from defendant and/or under contract with defendant."

The second portion of defendant's motion concerns plaintiff's copyright registration VAu 34–113, which covers the artwork appended to the complaint. Defendant seeks an order requiring plaintiff to cancel the registration on the ground that it was improperly and wrongfully obtained.

The third aspect of defendant's motion for a preliminary injunction concerns plaintiff's authorizing, selling, or licensing copies of the "Strawberry Shortcake" character. The fourth part of the motion is aimed at plaintiff's representations to others that she is the creator of the character and that she holds the copyright to the character.

Defendant seeks to restrain plaintiff from these activities.

The United States Court of Appeals for the Sixth Circuit has set forth the following four factors to be considered when evaluating an application for preliminary injunctive relief: 1) whether the movant has demonstrated a strong or substantial likelihood or probability of success on the merits; 2) whether the movant has demonstrated irreparable harm; 3) whether the issuance of the injunction would cause substantial harm to others; and 4) whether the issuance of the injunction would serve the public interest. *Mason County Medical Assn. v. Knebel*, 563 F.2d 256 (6th Cir. 1977).

▪ Defendant initially seeks to enjoin plaintiff from registering with the Copyright Office her leader card artwork. In light of the broad range of questions of material fact for trial identified above in connection with the denial of defendant's motion for summary judgment, it cannot be said that defendant has demonstrated the requisite likelihood of success on the merits. The first aspect of defendant's motion is therefore denied, and plaintiff shall be entitled to register with the Copyright Office her leader card artwork. In reaching this conclusion, this Court notes that registration is not a condition of copyright protection, 17 U.S.C. § 408(a), but is a condition precedent to maintaining an infringement suit. 17 U.S.C. § 411. Therefore, by allowing plaintiff to register her leader card artwork, the entire dispute between the parties concerning the "Strawberry Shortcake" and "Strawberry Girl" artwork will be presented and resolved. Furthermore, in the event defendant prevails on the merits and it is determined that plaintiff's copyright registrations are improper, it is within the power of this Court to order the cancellation of the improper registrations. *See L. Batlin & Son, Inc. v. Snyder, supra.* Lastly, to the extent that defendant seeks to enjoin the registration of artwork other than "Strawberry Shortcake" or "Strawberry Girl" artwork, this Court notes that such other artwork is not at issue in this action and concludes that an order of this Court with respect to such other artwork would constitute an advisory opinion. Defendant's request to enjoin the registration of artwork other than "Strawberry Shortcake" or "Strawberry Girl" artwork is therefore denied.

▪ Secondly, defendant seeks an order compelling plaintiff to cancel her copyright registration VAu 34–113. Again, however, in light of the questions of material fact in this action, defendant has failed to demonstrate the necessary likelihood of success on the merits. The second aspect of defendant's motion for preliminary injunction is therefore denied.

The third and fourth portions of defendant's motion involve plaintiff's assertions of ownership and threatened selling or licensing of the "Strawberry Shortcake" or "Strawberry Girl" character. On January 4, 1983, pursuant to an agreement of the parties, this Court ordered that plaintiff shall not, until ordered otherwise, attempt any commercial exploitation of the "Strawberry Shortcake" or "Strawberry Girl" character. Nothing indicates plaintiff has or might breach that agreement and violate that order. Therefore, the concerns raised by the third and fourth aspects of defendant's motion appear to have been alleviated.

Summarizing, as to its first and second portions, defendant's motion for preliminary injunction is denied. As to the third and fourth aspects of the motion, the concerns therein have been alleviated by a prior agreement between the parties and a corresponding order of this Court.

## III. PLAINTIFF'S MOTION TO HAVE PLACED IN ESCROW DEFENDANT'S STRAWBERRY SHORTCAKE LICENSING INCOME

Plaintiff has moved to have placed in escrow pending the outcome of this action the income of defendant attributable to its licensing the Strawberry Shortcake character to third parties. She maintains that she has demonstrated a reasonable likelihood

of success on the merits of this action and, in the event she prevails on her infringement claim, is entitled to recover the profits generated by defendant as the result of the infringement. Plaintiff asserts that among defendant's most substantial infringing activities is its licensing of the character to various manufacturers for display on products produced by the licensees. Plaintiff admits that this motion presents an unusual request, but argues that placing the licensing income in escrow will preserve the status quo and is the only way she can be assured of obtaining satisfaction in the event judgment is entered in her favor.

Defendant opposes plaintiff's motion. Initially, defendant argues that the precedent upon which plaintiff relies involving the escrow of patent royalties is inapposite. Defendant also argues that plaintiff has no evidentiary support for her assertion that defendant will be unable to pay the amount of a judgment entered in her favor. Appended to defendant's brief is a copy of its 1982 Annual Report.

■ Having reviewed the evidence submitted by the parties in connection with defendant's motions for summary judgment and for a preliminary injunction, it cannot be said that either party has demonstrated the necessary likelihood of success on the merits to justify any form of preliminary relief. Furthermore, a study of defendant's annual report indicates that it is financially healthy. Plaintiff's concerns with respect to defendant's ability to satisfy a judgment entered in her favor appear unfounded. Plaintiff's motion to place defendant's Strawberry Shortcake licensing income in escrow is denied.

## IV. PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

Plaintiff seeks leave to amend her complaint to conform to matters she has learned during the discovery process. In opposition to her motion, defendant characterizes plaintiff's claims as "frivolous" and asserts that this motion is merely an attempt to prolong this action and to avoid an award of summary judgment against her.

■ As previously noted, however, there exist many questions of material fact for trial in this action. Furthermore, by permitting plaintiff to amend her complaint, the entire dispute between the parties will be presented and will be resolved. Plaintiff's motion for leave to amend her complaint is granted.

## V. CONCLUSION

Defendant's motion for summary judgment is denied. The first and second aspects of defendant's motion for a preliminary injunction are denied; the third and fourth aspects of the motion have been resolved by a prior agreement between the parties and a corresponding order of this Court. Plaintiff's motion to have placed in escrow defendant's Strawberry Shortcake licensing income is denied. Plaintiff's motion for leave to file a first amended complaint is granted.

IT IS SO ORDERED.